BENEFICIAL FINANCE CO. OF LANDOVER *v.* ADMINISTRATOR OF LOAN LAWS OF THE STATE OF MARYLAND

[No. 212, September Term, 1970.]

*Decided January 14, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Lewis A. Noonberg* and *Norman P. Ramsey*, with whom was *Alan N. Gamse* on the brief, for appellant.

*Stanford D. Hess, Assistant Attorney General*, with whom was *Francis B. Burch, Attorney General*, on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The question presented is whether an unintentional clerical miscalculation of interest by a small loan licensee that caused a charge to a borrower greater than that permitted by the governing statute voided the loan completely under the provisions of Code (1968 Repl. Vol.), Art. 58A, § 16 (d). Judge Sodaro, sitting in the Baltimore City Court, in a thoughtful and sound opinion, held that it did, affirming the ruling of the Administrator of Loan Laws. We agree with Judge Sodaro.

The loan here involved was made in October 1968 in the sum of $418.09, to be repaid, principal and interest, by thirty monthly payments of $21.00 each. On November 29, 1968, the first monthly payment was made. The loan company credited $13.26 to interest and $7.74 to

principal. The computation was erroneous, made because an employee misread the interest tables and charged 35 days' interest rather than 34. The interest actually due on November 29 was $12.88 leaving $8.12 to be credited to principal. Thus the borrower's account on November 29 reflected an overcharge of interest of 38 cents. In July 1969 an examiner from the office of the Administrator of Loan Laws discovered the mistake in the course of a routine examination. The company promptly credited to principal the 38 cents. This still left an error of 9 cents because the credit should have been made as of November 29, 1968, but was not. Later the company made an entire and proper recalculation.

On October 21, 1969, the loan company was charged by the Administrator with violating §§ 16(c) and 16(d) of Art. 58A of the Code (the Maryland version of the Uniform Small Loan Law), which then read as follows:

> "(c) In addition to the interest and charges provided for by this article, no further or other charge, or amount whatsoever for any examination, service, brokerage, commission or other thing, or otherwise, shall be directly or indirectly charged, contracted for or received.
>
> "(d) If interest, or charges in excess of those permitted by this article shall be charged, contracted for, or received, the contract of loan shall be void and the licensee shall have no right to collect, retain or receive any principal, interest, charges or recompense whatsoever."

After a hearing the loan company was ordered by the Administrator to cease collecting, receiving or retaining any part of the principal or interest or charges on or in connection with the loan, and the proceedings in court followed.

The loan company urges that (a) an essential ingredient of usury is the intention to exact more than the law allows for the use of money and where, as here, the overcharge is made by unintentional mistake, there is absent

the necessary intent without which usury does not occur; (b) this rule was not changed by the adoption in Maryland of the Uniform Small Loan Law; and (c) the legislative history and the uniform administrative interpretation show that unintentional mistake does not void a loan made under Art. 58A of the Code.

The loan company is right in saying that the general rule of long standing is that the finding of an intention to exact more than legal interest is an essential prerequisite to a finding of usury. *Duncan v. Md. Savings Inst'n,* 10 G. & J. 299, 312.

It does not follow that the legislature in establishing rules to govern and control "[t]he ceaseless conflict between the rapacity of money lenders and the necessities of borrowers," as the Court put it in *Finance Company, Inc. v. Catterton,* 161 Md. 650, by enacting the Small Loan Law by Ch. 88 of the Laws of 1918, intended to carry over into the new statute the rule of intention applicable to traditional usury. Chapter 88 recited in its preamble that the act was remedial, stating:

> "And Whereas, The conduct of [the small loan] business has long been a cause of general complaint, and of much hardship and injustice to borrowers, and there is no regulation or provisions of law which has proved effective for the protection of such borrowers and for the punishment of usurious money lenders;"

*Catterton* went on to describe more fully why the act was passed, saying (p. 654 of 161 Md.) :

> "Since the borrowing of money by the relatively poor is so often under the drive of dire and immediate necessity, it has been found that the complete prohibition of high rates of interest on small loans on doubtful security is impracticable and ineffective, and the whole trend of modern thought is that the reasonably adequate protection of the borrower in such cases can only be

afforded by regulation. Countless instances illustrate the oppression and the injustice wrought on small needy borrowers by the callous and cruel greed so often found in the class engaged in the business of lending money in small amounts to those who have little to offer as security except their future earnings, or used and worn articles of little value to any one other than the borrowers, by whom they are needed for the ordinary purposes of daily life. In the very nature of things, such borrowers are frequently illiterate, often inexperienced, and usually, as a result of ignorance, inexperience, poverty, or necessity, incapable of defending themselves against wrongful, oppressive, fraudulent, or extortionate exactions by the lender. It was to mitigate rather than eradicate the evils incident to the business, and to afford to the borrower the greatest practicable measure of protection that the act was passed."

We think the legislature recognized that the borrower would not be afforded the greatest practicable measure of protection unless the lender was deterred from overcharging him by sanctions that in effect imposed an automatic heavy fine for violating the law and the protection it sought to give the borrower. Since a lender almost always, it must be imagined, would contend that an overcharge was inadvertent and therefore each individual overcharge would become a matter of controversy, the practicable answer of the lawmakers was to eliminate intention from the picture. We perceive no reason why the legislature could not do away with intention as a factor and make action determinative. We so ruled recently in Canada's Tavern, Inc. v. Town of Glen Echo, 260 Md. 206, 271 A. 2d 664 (1970), holding that the general rule that abandonment of a nonconforming use in zoning cases depended upon the concurrence of two factors, intention to abandon and some overt act or failure to act, had been modified by statute to eliminate intention as a factor and

make abandonment turn on cessation of use for a speci-
fied period.

We think the legislature left no doubt of its intention
and purpose to make void every loan as to which there
was an overcharge. The language of § 16(d) of Art. 58A
of the Code is simple, direct, plain and unambiguous. It
provides that if interest or charges greater than per-
mitted by Art. 58A "shall be charged, contracted for, or
received, the contract of loan shall be void and the li-
censee shall have no right to collect, retain or receive any
principal, interest, charges or recompense whatsoever."
We said in *Hunt v. Montgomery County*, 248 Md. 403,
414:

> "A statute is not made unclear or ambiguous
> because one side in a controversy, in order to ob-
> tain a desired result, gives its words a mean-
> ing they do not on their face appear to have. If
> the words of a statute, given their normal mean-
> ing, are plain and sensible the legislature will
> be presumed to have meant the meaning the
> words import. The court will not substitute for
> literal intent a real intent unless the literal words
> of a statute say something the legislature could
> not possibly have meant. *Amalgamated Ins. v.
> Helms*, 239 Md. 529, 535. Rules and methods of
> construction and interpretation, including legis-
> lative history and administrative practice, are
> resorted to for the purpose of resolving an am-
> biguity, not for the purpose of creating it."

Article 58A must be read as a whole in determining legis-
lative intent. That the General Assembly made intention
a factor when it desired to do so and that its purpose was
not to make intention a factor in § 16(d) is shown by
other sections of Art. 58A enacted in 1968 by Ch. 439
of the Laws of that year. Section 16(e), the subsection
that immediately follows § 16(d), provides:

> "No licensee shall induce or *knowingly permit*
> any borrower to split up or divide any loan made

under this article for the purpose of obtaining a greater rate of interest or charges than would otherwise be permitted by this article. No licensee shall *knowingly permit* any husband and wife during coverture, individually or together, or any endorser, guarantor or surety, to be indebted directly or contingently under more than one contract of loan at the same time to such licensee." (Emphasis added.)

Section 23 provides:

"Any licensee and any officer or employee of a licensee who shall *knowingly violate* the provisions of §§ 16, 17 or 19 of this article, and any person, copartnership, association or corporation, which shall *knowingly violate* the provisions of §§ 1, 21 or 22 (a) or this article, shall be guilty of a misdemeanor * * *." (Emphasis added.)

House Bill 13 of the 1968 Session of the General Assembly proposed to include in § 16 (d) of Art. 58A words that would delete overcharges resulting from clerical errors from the overcharges that would void a loan. The legislature struck out this proposed amendment in the course of the passage of House Bill 13, which later became Ch. 439.[1] Not only did the legislators refuse to weaken the sanction of making void a loan as to which there was an overcharge, wilful or not, but also added § 16 (e) and 23 above quoted to provide that specified violations of Art. 58A would subject the violator to criminal sanctions only if done "knowingly."

The legislative purpose not to include knowledge or intent as a prerequisite to the civil sanction for violation of § 16 (d) but to include them as a prerequisite to a crimi-

---

1. We note that, although the Maryland legislature of 1968 declined to allow unintentional errors as an excuse, the legislature of 1970 (by Ch. 713 of the Laws of that year) did amend § 16(d), effective July 1, 1970, to forgive clerical errors under certain circumstances so that the question before us will no longer arise.

nal sanction comes through strongly from this concurrence of legislative actions and omissions and certainly from and after July 1, 1968 left no doubt as to the meaning of § 16(d). This is particularly true in the light of the case of *Fisher v. Bethesda,* 221 Md. 271, decided in 1960, in which in dealing with similar provisions of the Industrial Finance Law (Art. 11 of the Code) (the Court pointed out the significance of the use of the word knowingly in one context and the failure to use it in another.

Section 196 (C) of Art. 11 provided that:

"If any amount in excess of the charges permitted by this article is charged, contracted for, or received, *except as the result of an accidental or bona fide error of computation,* the contract of loan shall be void, and the licensee shall have no right to collect or receive any principal, interest, charges, or recompense whatsoever * * * " (The italicized words are those that do not appear in any form in § 16(d) of Art. 58A prior to 1970.)

The holding of *Fisher* was that the premature collection of a delinquency charge was not an error of computation but a mistake of law, and therefore the entire loan was void. In the course of firming up this conclusion, Judge Prescott said (p. 277) :

"It is an elemental proposition that the statute should be construed so as to give effect, if possible, to every word, clause and sentence therein, and so that no part will be inoperative, superfluous, void or insignificant. * * * It will be noticed that the Section provides if 'any amount in excess of the charges permitted' is 'charged, contracted for, or received,' except [accidental or *bona fide* errors of computation], 'the contract of loan shall be void' and the licensee shall have no right to collect the principal or interest, etc. There is no mention here made about a wil-

438

ful purpose to transgress the law being necessary to avoid the loan; on the contrary, there is a clear and unambiguous statement that the mere doing of the acts prohibited renders the loan void. The act then continues, 'and the licensee * * * agents, and employees thereof who shall have *wilfully* and *knowingly* participated in such violation' shall be guilty of a misdemeanor. (Emphasis added.) It is obvious that if we are to adopt the construction suggested by the appellee—that, in order to avoid the loan, it must be shown that the appellee 'knowingly and wilfully' transgressed the law in exacting the overcharge—we must read into the first part of the statute the words 'knowingly and wilfully'; and also hold that the legislature used the phrase 'except as a result of an accidental or *bona fide* error of computation' with no purpose in mind whatever, for it is apparent that there could never be an accidental or *bona fide* error if it were knowingly and wilfully done. Moreover, we would have to hold that 'wilfully and knowingly' in the latter part of the section were used without significance; because, if the excessive amount 'charged, contracted for, or received' that renders the loan void in the first part of the section had to be 'knowingly and wilfully' charged, contracted for, or received, the legislature could have concluded the section by merely stating that the licensee and its employees, etc., who participated in the violation would be guilty of a misdemeanor, without the use of the words 'wilfully and knowingly.' It is plain that the mere charging, contracting for, or receiving of an overcharge (with the exception noted) was intended to make the loan void; but, before such charging, contracting for, or receiving of an excessive amount would constitute a crime, it must have been 'wilfully and knowingly' done.

"The desires of money lenders to obtain all that they can exact for the use of their money and the necessities of borrowers, especially those who require a comparatively small loan with little or no security, have perplexed the lawmakers of the world since very early times. Legislatures have frequently resorted to provisions which state that where the lender exacts amounts in excess of those permitted by law, a forfeiture of the loan results, not as a matter of compensation to the borrower, but, as pointed out above, as an aid to the enforcement of the law; and this is what was done in the enactment of Section 196 (C)."

In a well reasoned opinion in *Credit Finance Service v. Able* (D.C. Mun. App.), 127 A. 2d 396, 398-399, a strong Court reached the same conclusions as to the meaning and effect of § 16(d) of Art. 58A that this Court later did in *Fisher* as to § 196 (C) of Art. 11. There the inadvertent overcharge was 72 cents and the Court held that, inadvertent or not, the overcharge voided the loan under then § 16(b), now 16(d), of Art. 58A. It said:

"Our decision is that under the Maryland statute, once an overcharge has been established, mistake or inadvertence is no defense. We base our decision on the considerations already stated and also on the following grounds:

\* \* \*

"(2) \* \* \* courts should extend their protection as far as they reasonably and practically can to borrowers in this class.

"(3) It seems clear that it was the legislative intent to provide such protection by declaring void every contract under which unlawful interest is charged.

"(4) The Maryland legislature could have, but did not, provide that good faith should be a

valid defense and that overcharges made by mistake should not invalidate the contract.

"(5) The Maryland legislature, by making no exclusionary reference to inadvertent violations, has left to the courts no power to make exceptions in cases of this kind.

"(6) If inadvertence were sanctioned as a defense, the purpose of the statute could easily be thwarted because, as appellees very properly suggest, loan companies would seldom admit that their overcharges or errors were wilful or intentional. Open admissions of usurious intent are among the rarest phenomena known in legal history."

We agree with the reasoning and conclusions of the Court in *Able*.

The loan company presents the argument that administrative practice over a long period of years requires a decision that inadvertent overcharges do not void the loan but only require correction of the error as of the date it was made. It points to a letter the then Administrator of Loan Laws sent to all licensees in December 1946 as follows:

"While checking the licensed small loan office in Maryland, we of course find many errors in interest computation.

"We found, however, that there is no uniform method of handling credits and adjustments on accounts.

"We are requesting that on and after January 1, 1947, in all cases where errors have been made in interest computation, a separate entry be made, preferably in red, on the ledger card and credit be given as of the date error was made on customer's payment."

There is no showing of a uniform practice from 1918 to 1946, and in 1960 another Administrator asked the At-

torney General if an inadvertent overcharge voided a loan under then § 16(b), now 16(d), and was advised that "the loan has become void because of the overcharge of interest," and the lender could not "collect any further payments on the loan." 45 Op. A.G. 177. This was followed in 1968 by the legislative refusal to excuse accidental overcharges indicated by its striking out of provisions that would have produced that result. We need not pause to consider whether the administrative interpretation given § 16(d) over the years is, to use the words of the appellant, that "longstanding and consistent administrative interpretation acquiesced in by the Legislature [which] is entitled to great weight and should not be overturned except for the most compelling reasons, *Sanza v. Md. Board of Censors*, 245 Md. 319; *Smith v. Higinbothom*, 187 Md. 115," for we see another principle as controlling the matter of administrative practice. That is the rule enunciated and followed in *Bouse v. Hutzler*, 180 Md. 682, 687:

> "The court below decided in favor of the defendant upon the presumption that his method of calculation was in accordance with the unvarying administrative practice. It appears, however, that the practice in this State has certainly not been uniform in the last generation. Indeed, utterly conflicting rulings on the question have been given to Registers of Wills by successive Attorneys General of the State. Nevertheless, even if there had been an unvarying practice, the Court of Appeals would not sanction a method of calculation which would tolerate an evasion of taxes payable to the treasury of the State. It is quite true that where the language of a statute is ambiguous and susceptible of two reasonable constructions, a long and unvarying administrative practice has a very persuasive influence, if not an entirely controlling effect, upon the judicial construction of the

statute. But the rule of contemporaneous construction does not preclude an inquiry by the courts into the correctness of such a construction. Where the language is clear and explicit, and susceptible of a sensible construction, it cannot be controlled by extraneous considerations. No custom, however long and generally it has been followed by officials, can nullify the plain meaning and purpose of a statute. An administrative practice contrary to the plain language of a statute is a violation of the law; and a violation of the law, even though customary, does not repeal the law."

To the same effect see *Rogan v. B. & O. R.R. Co.*, 188 Md. 44, 58; *State Tax Comm. v. West. Md. Ry. Co.*, 188 Md. 240, 258; *County Treas. v. State Tax Comm.*, 219 Md. 652, 657 (holding that a custom of thirty years' standing could not control the statute to the contrary since there was no ambiguity in the law — "Administrative construction is called into play only when two reasonable interpretations of the act to be construed are possible. 'But when the language is plain and unambiguous, the judicial construction cannot be controlled by extraneous considerations * * *.' ") ; *Comptroller v. A. Cyanamid Co.*, 240 Md. 491, 504-507; *Hunt v. Montgomery County, supra*, 248 Md. 403, 414-415; *Scull v. Montgomery Citizens League*, 249 Md. 271, 285; *Atlantic, Gulf v. Dep't of Assess. & T.*, 252 Md. 173, 183 (Judge Barnes for the Court saying: "It is well settled that where the language of a statute is clear and unambiguous, an administrative interpretation contrary to that clear and unambiguous meaning will not be given effect * * *.").

The provisions of § 16 (d), prior to the amendment of 1970, are clear, unambiguous and mandatory and require that the order appealed from be affirmed.

*Order affirmed, with costs.*