**David J. KUYKENDALL, Appellant,**

v.

**John W. MALERNEE, Sr., Appellee.**

**No. 45847.**

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 23, 1973.

Released for Publication by Order of the
Court of Appeals, Nov. 15, 1973.

Cubbage & Cubbage by Stephen B. Cubbage, Cushing, for appellant.

Fitzgerald, Houston & Worthington by Donald L. Worthington, Stillwater, for appellee.

BOX, Judge:

This is an appeal by David J. Kuykendall, the plaintiff in the trial court, which presents a case of first impression in this

state as to the recovery of penalties under the Uniform Consumer Credit Code. The named defendant, John W. Malernee, Sr., is now deceased. Hazel Malernee, the widow of the deceased, was appointed administratrix of the estate of the deceased and is defending this appeal.

The record before this court consists solely of (1) the minutes of the trial court, (2) a transcript of the hearing on attorneys fees, and (3) the journal entry of judgment entered May 24, 1972. The journal entry states the facts and rulings of the trial court which gave rise to this appeal:

"1. This is a civil suit under the Uniform Consumer Credit Code by David J. Kuykendall vs. John W. Malernee, Sr., to have a consumer loan declared void, to negate the necessity of repaying either the principal or interest, and to collect damages by way of civil penalties for failure of the lender to disclose rates, charges and other required matters.

"2. The undisputed facts of the matter were that in September of 1971 Kuykendall went to Malernee to obtain $600.00. Malernee gave the $600.00 to Kuykendall. The only documentary evidence of the transaction is a check for $720.00 payable in six months signed by Kuykendall in favor of Malernee. A 1968 Buick of Kuykendall's was left in the possession of Malernee together with its Louisiana title in the name of a woman identified as Kuykendall's mother, which title had been assigned on the back to Kuykendall. A new title had not been made to Kuykendall, nor did Kuykendall make any assignment to Malernee. The understanding was that when $720.00 had been paid to Malernee, Kuykendall could have the car back.

"3. Kuykendall contends that the transaction was a supervised consumer loan, that Malernee was not a supervised lender and had no license to make such loans, that the finance charge was in excess of that allowed by law, and that the

lender failed to make to him any of the disclosures required by law.

"Malernee contends that the transaction was a sale whereby Kuykendall sold him the car for $600.00 with the understanding that he could buy it back in six months for $720.00, or in the alternative, he contends that if the transaction was not a sale but a loan, then he was acting as a pawnbroker and was not subject to the provisions of the Uniform Consumer Credit Code (UCCC).

"4. The issues stated by the pleadings and developed during the trial were:

"(1) Whether the transaction was a loan or a sale.

"(2) Whether the UCCC applies to pawnbrokers, and if so, whether it makes a difference in the result of the case that the pawnbroker is licensed or unlicensed as a pawnbroker.

"(3) Whether, if the transaction is declared void under Sec. 5–202(2) of the UCCC, the lender can also be penalized in damages under Sec. 5–203 (civil liability for violation of disclosure provisions) and under 5–202(4) (penalty where borrower entitled to refund of excess charge).

"(4) Whether plaintiff is entitled to his reasonable attorney's fee, and if so, what is 'reasonable.'

"(5) Whether borrower is entitled to the immediate return of his automobile.

"5. This matter came on for hearing before the court on May 5, 1972, the plaintiff appearing in person and with his attorney, Stephen B. Cubbage, and the defendant appearing in person and with his attorney, Sam Withiam. The parties put on their testimony and arguments, and the court found generally in favor of the plaintiff, but reserved a final ruling until the parties could present briefs as to whether more than one penalty section could apply to the one transaction.

"And now on this 24th day of May, 1972, after having heard testimony on attorney fees and further argument the court makes the following findings of fact:

"(1) That the transaction was a loan and not a sale, and was in fact a consumer loan made primarily for a family or personal purpose, and was made by Malernee, a person regularly engaged in making loans.

"(2) That the rate of interest, depending upon the testimony, was in excess of 18% and ranged up to 40% per annum.

"(3) That Malernee was not a supervised lender in that he had never obtained a license from the Commissioner of Consumer Affairs to engage in such loan business, and therefore was not authorized to make a loan finance charge in excess of 10% per annum.

"(4) That such transaction was further a pawnbroking transaction requiring the pledge and possession of a 1968 Buick as security.

"(5) That Malernee was not a licensed pawnbroker with a license from a municipal corporation or the state.

"(6) That while the UCCC as written at this time excludes rates and charges and the disclosure of rates and charges of a *licensed* pawnbroker, a pawnbroker is otherwise subject to the regulations and provisions of the UCCC.

"(7) That whether the defendant Malernee is licensed or unlicensed as a pawnbroker is not material to this case for the reason he had no authority under Sec. 5–302 to make a supervised consumer loan (a regulated loan with a loan charge in excess of 10% per year), he not being a supervised lender.

"(8) That under the terms of Sec. 5–202(2) this loan is void and the debtor Kuykendall is not obligated to pay either the principal or the loan finance charge.

"(9) That since this loan is void from the beginning with its penalty under (8) above, no additional penalties under Sec. 5–203 are allowable for failure to disclose.

"(10) That the penalties under Sec. 5–202(4) for failure to refund excess charges are not allowable for the reason that plaintiff Kuykendall has never paid anything on principal or interest.

"(11) That Malernee in keeping such pledged Buick has been obligated to buy a title and license for it, and has expended monies for antifreeze and other expenses in safeguarding it totalling $94.20 and is entitled to reimbursement for same.

"(12) That Kuykendall is entitled to the return of the pledged 1968 Buick. That upon the payment to Malernee of the $94.20 the possession of said automobile shall be restored to him, and the parties are given until and through Wednesday, June 14, 1972, to make the payment and recover the possession as aforesaid.

"(13) That plaintiff is entitled to the costs of the action and his reasonable attorney fees in the amount of $600.00 which are taxed as part of the costs.

"IT IS THEREFORE THE ORDER OF THE COURT that the loan made by Malernee to Kuykendall is void and Kuykendall is not obligated to pay either principal or interest, that Kuykendall is entitled to the immediate possession of his 1968 Buick from Malernee upon the payment of $94.20 safeguarding costs to Malernee which is to be paid at any time before the close of business on June 7, 1972; that Malernee shall pay the costs of this action including $600.00 attorney fee for the benefit of Kuykendall's attorney, Stephen B. Cubbage."

The plaintiff asserts three errors on this appeal, in substance as follows:

1. The court erred in awarding $600.00 to plaintiff for attorney fees. This was not a reasonable attorney fee under the circumstance but was inadequate.

2. The court erred in requiring the plaintiff to refund the excise tax paid by the defendant.

3. The court erred in not imposing the additional penalties under Section 5–203 for failure to disclose and under Section 5–202(4) for failure to refund excess charges.

We will treat these alleged errors in reverse order.

The Uniform Consumer Credit Code was enacted by the Oklahoma Legislature in 1968 and codified as 14A O.S., §§ 1–101 to 9–103. The full text of the provisions relevant in this case is as follows:

"§ 3–501. Definitions: 'Supervised loan'; 'Supervised lender'.—(1) 'Supervised loan' means a regulated loan in which the rate of the loan finance charge exceeds ten percent (10%) per year as determined according to the provisions on loan finance charge for consumer loans (Section 3–201).

"(2) 'Supervised lender' means a person authorized to make or take assignments of supervised loans.

"§ 3–502. Authority to make supervised loans.—Unless a person is a supervised financial organization or has first obtained a license from the Administrator authorizing him to make supervised loans, he shall not engage in the business of

"(1) making supervised loans; or

"(2) taking assignments and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans.

"§ 5–202. Effect of violations on rights of parties.—

"(2) If a creditor has violated the provisions of this Act applying to authority to make supervised loans, (Section 3–502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge. If he has paid any part of the principal or of the loan finance charge, he has a right to recover the payment from the person violating this Act or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt.

With respect to violations arising from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the violation occurred. With respect to violations arising from other loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was paid.

\* \* \* \* \* \*

"*(4) If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten times the amount of the excess charge.* If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Act, the penalty may be recovered even though the creditor has refunded the excess charge. No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the Administrator (Section 6–113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made.

\* \* \* \* \* \*

"(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error no liability is imposed under subsections (1), (2), and (4) and

the validity of the transaction is not affected.

"(8) In any case in which it is found that a creditor has violated this Act, the court may award reasonable attorney's fees incurred by the debtor.

"§ 5-203. Civil liability for violation of disclosure provisions.—(1) Except as otherwise provided in this section, a creditor who, in violation of the provisions on disclosure (Part 3), other than the provisions on advertising (Sections 2-313 and 3-312), of the Article on Credit Sales (Article 2) and the Article on Loans (Article 3), fails to disclose information to a person entitled to the information under this Act is liable to that person in an amount equal to the sum of

"(a) Twice the amount of the credit service or loan finance charge in connection with the transaction, but the liability pursuant to this paragraph shall not be less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00); and

"(b) in the case of a successful action to enforce the liability under paragraph (a), the costs of the action together with reasonable attorney's fees as determined by the court.

\* \* \* \* \* \*

"(3) A creditor may not be held liable in any action brought under this section for a violation of this Act if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error.

\* \* \* \* \* \*

"(6) In this section, creditor includes a person who in the ordinary course of business regularly extends or arranges for the extension of credit, or offers to arrange for the extension of credit."

Does the fact that this loan is void under Section 5-202(2) as an unauthorized supervised loan preclude the additional penalties under Section 5-202(4) and Section 5-203? Oklahoma has no case law

on this problem and from a review of other materials and articles, this Court finds no case interpretation elsewhere. We must undertake a determination then of legislative intent from the statutory language and from secondary sources.

 It is obvious that the legislative objective in these statutes is to attach disadvantageous consequences or penalties to acts or omissions of lenders during a loan transaction and thereby to discourage them. The Commissioners on Uniform Laws in proposing the Consumer Credit Code recognized that the borrower would not be afforded the greatest measure of protection unless the lender was deterred from overcharging him by sanctions that in effect imposed an automatic heavy fine for violating the law and the protection it sought to give the borrower. Under Section 5-202(2) both the principal and excessive finance charge are made uncollectible by terming any such unauthorized supervised loan void. Similar provisions have been construed against the creditor. Buford v. American Finance Co., 333 F.Supp. 1243 (N.D.Ga.1971); Beneficial Finance Co. v. Administrator, 260 Md. 430, 272 A. 2d 649 (Ct.App.1971). Void as that term is used in this provision does not mean that the transaction is to be considered for other purposes as if it had never occurred. In the very same provision the borrower is allowed to recover any payments made. Subdivision (4) of this same section (5-202) allows the debtor to collect additional penalties for any excess charge not refunded, even following refund if the creditor's violation of the section is deliberate or in reckless disregard thereof. The trial court specifically found under (10) that

". . . the penalties under Sec. 5-202(4) for failure to refund excess charges are not allowable for the reason that plaintiff Kuykendall has never paid anything on principal or interest."

Thus it is clear that the borrower having made no payments under subdivision (4) of Section 5-202, said subsection would not be applicable under the fact situation now under review.

Under Section 5–203 penalties are attached to the failure of the creditor to disclose credit information. A transaction in violation of Section 5–202(2) certainly could not be considered void in the sense of nullifying prior omissions of the creditor to disclose rates and finance charges before the loan ever was made. We conclude that the trial judge was in error in treating this transaction as a complete nullity for all purposes as apparently he did merely because it constituted a violation of Section 5–202(2).

These statutory violations seem sufficiently distinct or separate to impose all of the various penalties on a lender if he has committed all these violations in the course of a single loan as occurred in the case at bar. Otherwise the legislative intent to discourage or proscribe the described acts or omissions of lenders is not fully effectuated. The Code Comments to Section 5–202 state in part:

"The Act provides for other remedies in addition to those set forth in this section. The debtor has a defense to the enforcement of a transaction which violates Section 5.107 on extortionate extensions of credit. Section 5.108 gives the debtor a remedy in certain cases of unconscionability. Section 5.203 sets forth the rights of the debtor with respect to transactions in which the creditor has violated the provisions on disclosure. . . ."

Why should a borrower not be allowed to seek every redress of the wrongs committed against him? Each section of the UCCC, Part 2, Article 5, sets forth certain remedies of the debtor in the event of violation of the Code by the creditor and it would appear to be unjust to allow the injured borrower to recover for only one violation. Voidness of the loan is the penalty arising because of an excessive rate and is completely separate from the penalty for violation of the disclosure requirements. In Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270, 276 (S.D.N.Y. 1971) the court said: "The thrust of the Act (The Federal Truth in Lending Act)

and its fundamental weapon of compelled disclosure is 'prospective.' Its purpose is to put the borrower in possession of the pertinent information before the plunge, so that he may know and intelligently compare his options." Thus both sections of the Consumer Credit Code providing for civil remedies for charging excessive interest and failure to disclose may be awarded the plaintiff. Prospective disclosure must be made before anything has happened and while everything about the transaction is unknown. Without this type of exchange of information pertinent to the terms of the transaction prior to consummation or execution, the borrower is unable to make an intelligent decision as to the obligation.

Draftsmen of the Credit Code, in evaluating methods of penalizing violating creditors, considered that the debtor should be compensated and provided with sufficient incentive to bring an action upon all alleged violations and at the same time that an acceptable penalty of practical effectiveness and of deterrent value should be imposed upon the erring lender.

Consumer protection penalties of a multiple nature were thus adopted in conjunction with the voidness penalty to accomplish the maximum deterrent effect, and to achieve the desired result of controlling small lenders in their exercise of monopolistic power over persons in need of consumer loans. Thus we hold that both sections are available to a debtor if the evidence substantiates same.

Defendant's second complaint deals with the court's requiring plaintiff to set off or refund certain excise tax expenses which defendant expended. In its pertinent part 68 O.S.1971, § 2103 states:

"(a) There is hereby levied an excise tax of two (2%) percent of the value of each motor vehicle, automobile . . ., upon the transfer of legal ownership of any such vehicle registered in this State and upon the use of any such vehicle registered in this State and upon the use of any such vehicle registered for the first time in this State, except as otherwise provided in this Article. . . .

"(b) The provisions of this Section shall not apply to transfers made without consideration between husband and wife or parent and child."

 The fact that defendant paid the tax and had the vehicle registered while it was in his control is of no consequence here. These acts were not a requirement of the loan transaction but were done by the defendant at his own peril and risk and the result of such actions should not be a burden plaintiff has to bear. Thus we hold that the court erred in requiring plaintiff to reimburse defendant for the excise tax paid.

Plaintiff also contends that the court erred in refusing to award reasonable attorney fees incurred by plaintiff. This court recognizes that the cost of living and day to day business has also affected attorneys. In the case now under consideration, the right to recover reasonable attorney fees is set by statute and no limit or base is fixed other than that they be reasonable. The trial court cannot disregard the direct evidence introduced regarding the amount and character of services rendered; the labor, time and trouble involved; the character and importance of the litigation; the amount of money that may possibly be involved; the professional skill and experience called for; and the benefits derived from the services. See Driver v. Tolstornog, 358 P.2d 1108 (Okl.1960).

 The amount awarded, considering the original amount being sought by the plaintiff, the nature and extent of the services rendered by the attorney, and the fact that a contested trial was involved and briefs were required to be submitted on the question of damages by the court, was palpably inadequate.

We further hold that the trial court's conclusion, expressed in paragraph (9) of its findings, that other penalties should not be allowed is hereby reversed, together with the $600.00 awarded as attorney's fees, and the case is remanded to the trial court to redetermine these matters as the evidence may warrant and for such further proceedings as may be required under the circumstances not inconsistent with the views herein set out.

Affirmed in part, reversed in part and remanded with instructions.

ROMANG, J., concurs.