CRIDER ET AL. *v.* CULLEN ET AL.

[No. 44, October Term, 1948.]

*Decided January 12, 1949.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Paul R. Kach* for the appellants.

*J. Edgar Harvey, Deputy Attorney General,* and *Clarke Murphy, Jr., Special Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing on demurrer, without leave to amend, a bill for a declaratory decree construing Chapter 91 of the Acts of 1945, Code 1947 Supplement, Art. 43, sec. 44A, "providing for the establishment of a Bureau of Medical Services for indigent and medically indigent persons, or either of such classes; * * * to provide for the appointment of a Chief of said Bureau and the employees thereof; authorizing the

State Board of Health to establish a Council on Medical Care to advise in the formulation of policies for the administration of a medical care program, and providing for the appointment of the members of said Council" [title of act], and declaring "that in a proper case persons receiving benefits under the program of medical care established by such Act are entitled to receive thereunder the services of a Doctor of Chiropractic and the latter properly compensated for his professional services rendered such person". The bill also prays an injunction "requiring the defendants to revise their rules and practices to so provide" and general relief. The defendants are the individuals who constitute the State Board of Health, the Director of the State Board of Health, and those who constitute the Council on Medical Care of the State of Maryland. The plaintiffs are the State Association of Chiropractic Physicians, "a non-profit Maryland corporation engaged in raising and maintaining the standards of that profession", and six individuals, each "a duly licensed Doctor of Chiropractic" [presumably meaning a person "licensed to practice Chiropractic", Art. 43, sec. 446], who resides and maintains an office in Maryland and "regularly practices his profession as a Doctor of Chiropractic as his means of livelihood". The individuals are six of the seven members of the "Legislative Committee" of the Association.

The Act of 1945 by amendment of section 33 of Article 43 authorized the State Board of Health to establish the Bureau of Medical Services and by adding section 44A provided: "44A. The Bureau of Medical Services, under the direction of the Director of Health, shall (1) administer a program of medical care in the State of Maryland for indigent and medically indigent persons, or either of such classes; for this purpose the Bureau of Medical Services is hereby authorized to contract with physicians, dentists and hospitals for the medical, dental, surgical and hospital treatment of eligible persons; within the provisions of the Budget the said Bureau is hereby authorized to provide bedside nursing care for eligible

persons. (2) The Bureau of Medical Services, under the direction of the Director of Health, shall conduct and operate such hospitals as may be established by law and placed under the jurisdiction of the said Board of Health for the care of persons suffering from chronic diseases. The State Board of Health shall appoint a Chief of the Bureau of Medical Services upon nomination of the Director of Health, and also such employees, including nurses, as may be necessary to accomplish the purposes of this section in accordance with the provisions of the Budget. * * * The State Board of Health shall establish a Council of Medical Care to advise in the formulation of policies for the administration of the said medical care program; the said Council to consist of [two members appointed by the Medical and Chirurgical Faculty of Maryland, two by the State Board of Health, one to be the Director of Health, one from the faculty of the Medical School of Johns Hopkins University, one from that of the University of Maryland, one Maryland hospital administrator, the Director of the State Department of Welfare, one dentist, one nurse, one pharmacist, and one appointee of the Maryland Medical Association]. The State Board of Health may make, ordain, alter, amend or abolish rules and regulations for the administration and government of said Bureau * * * and for the medical care of indigent and medically indigent persons, or either of such classes, which rules and regulations in so far as they are within the power of said Board and are consistent with law, shall be binding on all persons whomsoever, * * *." The State Board of Health has made the following rule or statement of policy: *"Payment to non-medical practitioners*—For the present the program is paying only for the services of physicians, dentists and registered nurses. No payments are being made for services rendered by chiropractors, osteopaths, naturopaths, chiropodists, optometrists, or physical therapists."

One of the individual plaintiffs rendered chiropractic service to recipients of aid from the medical care program, but payment therefor was rejected pursuant to

this rule or statement of policy. The bill alleges: "That chiropractic treatment is a recognized science, of admitted value in the treatment of many human ailments. That persons receiving aid under the medical care program are from time to time referred to chiropractors by their medical physicians for treatment, and from time to time patients of chiropractors, who have been such theretofore and require their services are received for benefits under the said medical care program in other respects, but denied chiropractic treatments thereunder." It is not alleged that "any persons receiving aid under the medical care program" have been referred to any of plaintiffs "by their medical physicians" for treatment. The bill also alleges "that a true construction of Chapter 81[91] of the Acts of 1945 is that thereby is established, for the persons eligible thereto, *a program of medical care,* which, in a proper case, includes chiropractic treatments and the services of a Doctor of Chiropractic the same as other medical services and aids. That chiropractic science is a system of healing which does not use drugs or surgery to cure diseases but one whose value is universally recognized in the treatment of a number of ailments of the human body. To deny persons receiving benefits under the medical care program chiropractic aid and treatments when needed deprives them of the very thing the medical care program was established to furnish, to wit, proper medical care, and in some cases the lack of such treatments prolongs the period the patient must suffer disability and receive benefits under the State maintained and paid for medical program. [Plaintiffs] therefore aver that humanity, fairness and the selfish interest of the State unite in support of the position taken by them in this [bill]."

In a full and careful opinion Judge Sherbow held that under the Act of 1945 the "program of medical care" does not include chiropractic treatments. Defendants maintain that this construction of the act is correct and also that the corporation plaintiff and the members of the Council on Medical Care are not proper parties, but

that the Chief of the Bureau of Medical Services is a necessary party defendant. Manifestly, the corporation plaintiff has no interest which would entitle it to maintain such a bill. *Maryland Naturopathic Association, Inc. v. Kloman,* 191 Md. . . ., 62A. 2d 538. We find it unnecessary to decide the questions raised as to parties defendant or whether, if plaintiffs' construction of the act were correct, the individual plaintiffs could maintain suit. *Cf. Dvorine v. Castelberg Corporation,* 170 Md. 661, 668, 185 A. 562. Primarily, at least, the "program of medical care" is administered for the benefit of those who receive such care, not those who give it. We think Judge Sherbow's construction of the act is correct and likewise his disposition of the case on the merits, without passing upon questions as to parties.

Plaintiffs contend (*a*) that under the first clause, ending at the first semicolon, in the first sentence of section 44A, "a program of medical care" includes, "in a proper case", chiropractic treatments and (*b*) that the remainder of the first sentence, after the first semicolon, authorizing the Bureau "for this purpose * * * to contract with physicians, dentists and hospitals for the medical, dental, surgical and hospital treatment of eligible persons" and "to provide bedside nursing care for eligible persons", does not exclude employment of chiropractors for the same purpose, but merely authorizes the Bureau to contract with *some* physicians, dentists, hospitals, nurses—and chiropractors—instead of being required (as plaintiffs say it otherwise would be) to contract with *all* qualified persons and hospitals who seek such employment. We think this is a strained, unnatural construction of the language of section 44A and is also flatly contrary to the long established statutory definitions of practice of medicine and practice of chiropractic in Maryland. We see no warrant for separating the first clause from the rest of the section and construing it as all-comprehensive, unqualified by context in the rest of the section or even of the same sentence. Necessarily the details of a "program of medical care" could not all be

set out in a statute; much must be left to administrative discretion. On the other hand, it would hardly be expected that the legislature would, if it could, authorize an administrative bureau to administer "a program of medical care" without any further statutory indication of the nature of the program. At any rate, the legislature has not done so, but in one sentence has provided that the Bureau shall administer "a program of medical care" and for this purpose "is authorized to contract with physicians, dentists, hospitals and nurses for medical, dental, surgical and hospital treatment and nursing" —not with chiropractors for chiropractic treatment. The suggestion that authority "to contract" with specified classes means (and was necessary to confer) authority "to contract selectively" with *some,* instead of *all* seeking employment, of the specified classes—and also of other classes not specified—seems fanciful in its disregard of the meaning of words, both as to what they do and what they do not include.

Section 446 of Article 43, enacted by Acts of 1920, ch. 666, reenacted by Acts of 1941, ch. 501, provides: * * * (c) Chiropractic is hereby defined to be a drugless health system, the basic principle of which teaches that disease is caused by interference with the transmission of nerve impulses. The practice of Chiropractic is defined as diagnosis, the location of disaligned or displaced vertibrae of the human spinal column, the procedure preparatory to and the adjustment by hand of such misaligned or displaced vertebrae of the spinal column and its articulations, by any method not including the use of drugs, surgery or obstetrics, nor any branch of medicine, nor osteopathy, for the purpose of relieving such interference." Thus the practice of chiropractic is defined by statute as expressly excluding the use of "drugs" or "any branch of medicine" and as based on a healing system and cult which, in its theory of one cause of disease and a panacea or near-panacea in one treatment, is wholly at variance with the science and art of medicine as taught and practiced by physicians. Section 139 regards as

"practicing medicine" any person who shall operate on or prescribe for any ailment of another, but this provision is not applicable "to masseurs, or other manual manipulators who use no other means". These exceptions, among others, have been in the statute since it was first enacted in 1902. *Cf. Watson v. State,* 105 Md. 650, 658, 66 A. 635. Thus, long before practice of osteopathy or chiropractic was licensed, practice of those callings was excluded from unlawful practice of medicine, not by declaring it to be lawful practice of medicine without a license, but by declaring it not to be regarded as practice of medicine at all. This still is, and was when the act of 1945 was passed, the statutory distinction between practice of medicine and practice of chiropractic in Maryland. A "program of medical care" does not include chiropractic treatments.

There is before us no question as to merits or demerits of chiropractic treatments, but only a question of statutory construction. If the allegations of the bill as to the scientific nature of chiropractic treatment and its value "in the treatment of many human ailments" are at variance with the statutory definition in section 446, they cannot change the statutory definition or present any justiciable issue of fact between the bill and the statute. Under the statutory definition the theory of chiropractic, if it does not necessarily deny, does not affirmatively recognize or suggest, that chiropractic treatment is of value only "in proper cases" and not in the treatment of practically all disease. But, however this may be, to repeat, under the statutory definitions and other statutory provisions chiropractic treatment is not medical care.

Plaintiffs contend that, in the quoted rule or statement of policy of the State Board of Health, the words "for the present" indicate that the Board considers it has power (exercise of which it unreasonably delays and refuses) to pay for services of chiropractors. The meaning of these words is immaterial, since we hold that by the true construction of the statute itself the Board has no power to pay for chiropractic treatments.

Plaintiffs allege that "the professional standing and skill of Doctors of Chiropractic * * * was expressly recognized and acknowledged by the Court of Appeals in their opinion in *O'Dell v. Barrett,* 163 Md. [342] 347 [163 A. 191, 192]." In that case, a personal injury case, the court, in holding that a chiropractor was qualified to testify as an expert as to the effect of an injury to the spine, said: "In view of the fact that the state has recognized the qualifications of the chiropractor who testified in this case to treat maladjustments of the spinal column by the method specified, and in view of his long and extensive experience in the field of his licensed practice, we would not feel justified in ruling that the court below was wrong in allowing the witness to describe the probable effect upon the spinal column of a disarrangement of the pelvis, which is formed in part by the lower extremity of the spine, especially when the witness was testifying in reference to conditions which he had personally examined." The court did not "recognize" that chiropractors furnish "medical care".

Judge Sherbow, in a concise review of a letter in 1939 from the acting President of the Medical and Chirurgical Faculty of Maryland to the Chairman of the State Planning Commission, urging the formation of a committee to survey the problems of medical care and formulate recommendations, the formation of such a committee of the Commission, an interim report of the Committee to the Governor in 1943 and an eighty-page report in 1944, the recommendations in which were adopted in part, but not *in toto,* in the Act of 1945, concludes that "there is nothing in the reports referred to or in the Act as passed to indicate that the Legislature intended to include chiropractors in the medical care program". Plaintiffs contend that this "negative" conclusion is without force and also that this court cannot take judicial notice of these reports. It is unnecessary to consider whether, in case of ambiguity in the act, we could take judicial notice of these reports as aids to resolve any such ambiguity. *Hillman v. Boone,* 190 Md. 606, 612-613, 59 A.

2d 506, 509. We find no ambiguity in the words of the act. Since the language of the act is plain and free from ambiguity, the meaning of the language is the meaning of the legislature. *Roach v. Jurchak*, 182 Md. 646, 652, 35 A. 2d 817; *Saunders v. Maryland Unemployment Compensation Board*, 188 Md. 677, 681-682, 53 A. 2d 579, 581; *Tucker v. American Smelting & Refining Co.*, 189 Md. 250, 258, 55 A. 2d 692, 695.

The Act of 1947, ch. 714, added section 44B to Article 43. Section 44B provides that the program of medical care in Baltimore City shall be administered under the Commission of Health of the City and "for these purposes the Commissioner of Health * * * is * * * authorized to contract with physicians, dentists, hospitals, or other accredited agencies for the medical, surgical, hospital or other medical or nursing care of eligible persons". Without elaborating, it is sufficient to say that section 44B does not alter, but we think confirms our construction of Section 44A as not including chiropractic treatments in the program of medical care.

At the argument plaintiffs stressed the fact that their bill had been dismissed without leave to amend. They did not, however, suggest any amendment which would change the result reached by the lower court and by this court.

*Decree affirmed, with costs.*