R. W. BEVERUNGEN, JR., ET AL. v.
HENRY A. BRIELE ET AL.

[No. 592, September Term, 1974.]

*Decided March 14, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON and MELVIN, JJ.

*Richard T. Rombro*, with whom were *Wartzman, Rombro, Rudd & Omansky, P.A.* on the brief, for appellants.

*John F. King* and *Richard Bloch*, with whom were *Anderson, Coe & King* on the brief, for appellees.

ORTH, C. J., delivered the opinion of the Court.

The sole question presented on this appeal is whether a chiropractor may be designated a "Chiropractic Physician".

## STATEMENT OF FACTS

In an action for a declaratory judgment and injunction brought in the Circuit Court of Baltimore City by appellees [1] (M. D.'s) against appellants,[2] (Chiropractors) the chancellor issued a decretal order on 25 July 1974 that Chiropractors "are hereby permanently restrained and enjoined from the use of the term 'physician' by itself or in combination with other words, in any printed or written form." [3] Chiropractors, aggrieved by the order, noted a timely appeal therefrom, and would have us reverse it. M. D.'s, satisfied with the determination of the action, urge that it be affirmed.

## THE FACTS

In paragraph 1 of an "Amended Bill of Complaint for Declaratory Judgment and Injunction" [4], M. D.'s alleged that they constituted the entire Executive Committee of the Medical and Chirurgical Faculty of the State of Maryland, that each was licensed to practice medicine and surgery in Maryland, and that each was presently engaged in such

---

1. Henry A. Briele, John F. Schaefer, Russell S. Fisher, William A. Pillsbury, Karl F. Mech, Manning W. Alden, John M. Dennis, individually and as the Executive Committee of the Medical and Chirurgical Faculty of the State of Maryland.

2. R. W. Beverungen, Jr., Charles N. Cooper, Joseph I. Goldberg, Calvin P. Hornstein, Leon Klein, Jerome Powell, Thomas A. Pitts.

3. The order also assessed the costs against appellants.

4. By order issued 17 March 1971, the court sustained with leave to amend a demurrer to a "Bill of Complaint for an Injunction" which instituted the action.

practice. Chiropractors' Answer, stating that they were without knowledge as to these allegations, operated as a denial. Maryland Rule 372 a 2. Chiropractors admitted the allegations of paragraph 2 that each of them was licensed to practice chiropractic in Maryland. Paragraph 3 alleged that each of Chiropractors "uses in printed or written form the term 'physician', by itself or in combination with other words and in conjunction with their names, on business-head stationery, upon office signs, or upon advertisements, or a combination thereof." Chiropractors denied that any of them used "physician" by itself, but admitted that "many" of them "have used" and "do use" the word "physician".

Evidence was adduced only by way of stipulation. Although neither a written stipulation nor a transcript of an oral stipulation appears in the record before us, from the opinion of the court below and from the briefs filed, it appears that it was stipulated that the allegations in paragraphs 1 and 2 of the Bill were correct, and that each of Chiropractors has used the phrase "Chiropractic Physician" in connection with his practice, but that none of them used the word "Physician" alone.

## THE LAW

Whether a chiropractor may use the designation "Chiropractic Physician" has been worrisome for many years, but has not been definitively decided by an appellate court in this jurisdiction. The issue has not only bothered chiropractors and the Board of Chiropractic Examiners but also medical doctors, the Board of Medical Examiners, and the Medical and Chirurgical Faculty of the State of Maryland.

In 1923 a chiropractor was holding himself out to be a "chiropractic physician". The Board of Chiropractic Examiners felt that the use of the word "physician" was "an attempt to practice chiropractic under a false name with the idea of creating the impression in the minds of the public that he is actually a physician." It asked the Attorney

General of Maryland if it would be justified in revoking his license. General Alexander Armstrong found that the Board had no statutory power to do so "although the practitioner in question may have no legal right whatever to describe himself as a chiropractic physician." The Attorney General suggested that the Board call to the attention of the licensee "the fact that in the judgment of the Board he is using an improper term and request that he refrain hereafter from doing so." 8 Opinions of the Attorney General 418 (1923).

In 1930 the Board of Chiropractic Examiners twice sought the opinion of the Attorney General. On 29 January it asked who was the proper person to sign a death certificate in case of death of a patient with a chiropractor in attendance. The Attorney General referred to what was then Code, Art. 43, § 21, providing that death certificates "shall be filled out and signed by the physician last in attendance upon the deceased person within 24 hours after death, excepting in such cases where the body is viewed by the coroner and an inquest is held upon the same, in which case the certificate of death shall be filled out and signed by the coroner." There were further provisions in case of death without "medical attendance" or violent death in which the coroner did not deem it necessary to hold an inquest. It was the flat opinion of the Attorney General that chiropractors, not being physicians, were not authorized to execute death certificates. 15 Opinions of the Attorney General 62 (1930). On 28 November the Board asked whether a chiropractor could prescribe diets. The Attorney General opined that it was unlawful for chiropractors in Maryland to prescribe diets. The rationale of the opinion, like the rationale of the prior opinion, was that a chiropractor was not authorized to practice medicine. Because the prescribing of diets as remedies was the practice of medicine, chiropractors could not lawfully prescribe them. 15 Opinions of the Attorney General 63 (1930).

On 27 October 1931 the Board of Chiropractic Examiners requested an opinion of the Attorney General whether a licensed chiropractor was a "physician" in Maryland. The Attorney General replied that the term "physician" as used

in the statutes meant "one who is authorized to practice medicine or surgery." He quoted what was then Code, Art. 43, § 384, providing that licensed chiropractors "shall not prescribe for or administer to any person any medicine or drugs now or hereafter included in materia medica, practice major or minor surgery, obstetrics, nor any other branch of medicine, nor practice osteopathy." He concluded that "a chiropractor is not a 'physician' in the State of Maryland." 16 Opinions of the Attorney General 73 (1931).

The latter part of 1939 the question of the use of the term "chiropractic physician" by a licensed chiropractor was again presented to the Attorney General by the Board of Chiropractic Examiners. Deputy Attorney General William L. Henderson, later Chief Judge of the Court of Appeals of Maryland, and Assistant Attorney General Robert E. Clapp, Jr., later Associate Judge of the Sixth Judicial Circuit, replied. 24 Opinions of the Attorney General 172 (1939). They noted that there were no statutory provisions prohibiting the use of designated titles by licensed chiropractors and referred to the opinion in 8 Opinions of the Attorney General 418. They pointed out that Art. 13, § 386 had been amended to give the Board the additional power of revoking the license of a chiropractor for "the attempt to do other than is permitted under this license in an effort to deceive the public." Citing 16 Opinions of the Attorney General 73 to the effect that a chiropractor is not a physician, they thought that by the use of the term "chiropractic physician", a chiropractor may create the impression in the minds of the public that he is a physician. This assumption, they said, as to the misleading character of the term "physician" was based on the fact that under the statutes "physician" is used as indicating one who is licensed to practice medicine and is borne out by the definition found in Webster's Dictionary that a physician is one who practices medicine. The opinion continued:

"We realize that it has always been customary for a person licensed to practice chiropractic to describe himself as a 'Doctor of Chiropractic,' but

> there is a distinction in this phrase in that the title 'Doctor' has no definite relation to the practice of medicine, since it may mean, one licensed to practice dentistry, one who has been given an honorary degree, such as Doctor of Philosophy, or one who is a Doctor of Divinity. In other words, the title 'Doctor' requires some further description in order to indicate the profession of the holder, whereas, as shown above, the term 'physician' as used in our statutes, exclusively describes a practitioner of medicine and requires no further description to indicate the profession of the holder." At 173-174.

The conclusion was that if the Board found that the chiropractor was using the term "chiropractic physician" in an effort to deceive the public, it could, by appropriate proceedings, revoke the license. It was suggested that the Board call the attention of the chiropractor to the "misleading character" of the term "chiropractic physician" and suggest that its use be abandoned because of deception of the public. "If the use is then continued, your Board could quite justifiably find that the deception is intentional and may, from that, find grounds for the revocation of the license." At 175.

The opinion of the various Attorneys General that the practice of chiropractic was not the practice of medicine first received the imprimatur of the Court of Appeals of Maryland in 1949 in *Crider v. Cullen*, 191 Md. 723. "[L]ong before practice of osteopathy or chiropractic was licensed, practice of those callings was excluded from unlawful practice of medicine, not by declaring it to be lawful practice of medicine without a license, but by declaring it not to be regarded as practice of medicine at all. This still is . . . the statutory distinction between practice of medicine and practice of chiropractic in Maryland." At 730. The Court declared and iterated that under statutory definitions and other statutory provisions "chiropractic treatment is not medical care." *Id.*[5] Then in *Osborne v. Talbot*, 197 Md. 105,

5. The Court distinguished *O'Dell v. Barrett*, 163 Md. 342, in which it was

111, decided in 1951, the Court of Appeals, citing *Crider*, declared: "A chiropractor is not a physician; his profession or calling is not the practice of medicine." And a year later, it again affirmed *Crider* and followed *Osborne* by stating in *Maurer v. Snyder*, 199 Md. 551, 561: "In the professional aspect a chiropractor is not a physician . . . ." [6]

In 1958 the Attorney General was asked by a clerk of a circuit court if a licensed chiropractor could certify to a girl's pregnancy with respect to the issuance of a marriage license. In holding that a chiropractor could not, the Attorney General affirmed the previous view that a chiropractor was not a physician and may not use the term "chiropractic physician." 43 Opinions of the Attorney General 235 (1958).

In 1961 the Attorney General was again asked if it was lawful for a licensed chiropractor to use the term "chiropractic physician." The inquiry this time was from the Board of Medical Examiners and was prompted by a letter to it from the Board of Chiropractic Examiners. The Board of Chiropractic Examiners had concluded, erroneously in the opinion of the Attorney General, that "there is nothing in either the chiropractic or medical practice laws which would authorize a prohibition of the use of the term 'chiropractic physician'." Upon reviewing prior Attorney General opinions, the statutory definition of chiropractic and the provisions of the Medical Practice Act, the Attorney General concluded "that use by a chiropractor of the terms 'chiropractic physician' is in violation of the medical practice act, if such chiropractor is not, in fact, a 'physician' and authorized to practice medicine and surgery in the State of Maryland." 46 Opinions of the Attorney General 36 (1961).

We find no change in the statutory law and no appellate decision in this State which would justify a departure from

---

held that a chiropractor was qualified to testify as an expert as to the effect of an injury to the spine by pointing out that the Court did not "recognize" that chiropractors furnish "medical care".

6. *Osborne* and *Maurer* each concerned restriction of the use of real property to residential purposes of "home occupation". In *Maurer* the Court noted that "in the real estate aspect the positions of a chiropractor and a physician are analogous", but not in the "professional aspect". 199 Md. at 561.

the view of the Court of Appeals that the practice of chiropractic is not the practice of medicine and that a chiropractor is not a physician. Appellants do not contend that the practice of chiropractic is the practice of medicine, agreeing that the practice of chiropractic is not encompassed within the practice of medicine as defined in § 119 of Art. 43 and, in fact, is expressly excluded by subsection (g) (6) which provides that the practice of medicine does not include "Practicing any profession otherwise registered, certified or licensed and defined by law." [7] "Chiropractic" is defined by Code, Art. 43, § 504 (c) to be "a drugless health system, the basic principle of which teaches that disease may be caused by interference with the transmission of nerve impulses". Expressly not included within the definition of "practice of chiropractic", however, are "the use of drugs, surgery, obstetrics or osteopathy, nor any branch of medicine. . . ." [8]

In the "Practitioners of Medicine" subtitle of Art. 43, "physician" is defined in § 119 (e) to mean "any person, including doctors of osteopathy, licensed to practice medicine in the State of Maryland in compliance with the provisions of this subtitle." Although defined in affirmative terms, and "as used in this subtitle", it is clear that the legislative intent was that "physician" apply *only* to persons so licensed to practice medicine. We find this manifest in the use of "physician" in various other subtitles of Article 43.[9]

---

7. We note that Code, Art. 43, § 119 (g) (5) prescribes that practice of medicine does not include "Massage by hand, or other manipulation by hand but by no other means."

8. "The practice of chiropractic is defined as diagnosis, the location of the disaligned or displaced vertebrae of the human spinal column, the procedure preparatory to and the adjustment by hand of such misaligned or displaced vertebrae of the spinal column and skeletal articulations by any method not including [those things above set out . . . .]." Code, Art. 43, § 504 (c).

9. For example, in subtitle, "Department of Health and Mental Hygiene", "physician" is used in the context of a licensed practitioner of medicine in § 1 D as a qualification of the Commissioner of Health; in § 7 as a qualification for deputy State health officers; in § 11 concerning the duty of "physicians" to report diseases contracted as a result of a person's employment; in § 12 concerning examination of physically handicapped children by a "qualified physician." In subtitle, "Vital Records", "physician" is defined in § 14 (a) (8) to mean "a person authorized or licensed to practice medicine in this State pursuant to the provisions of this article." In subtitle, "Miscellaneous Provisions", "physician" patently means a licensed

Chiropractors suggest that the legislature intended to restrict the meaning of "physician" as defined in the subtitle, "Practitioners of Medicine", to that subtitle.[10] We believe it clear that it did not.

---

practitioner of medicine wherever therein used — in § 31A concerning report of laboratory examination indicating venereal disease or tuberculosis; in § 31B about syphilis tests for pregnant women; in § 34 establishing minimum standards of examining laboratories and tissue banks; in § 38A — "Test of newborn child for phenylketonuria"; in § 38B concerning inflammation of eyes of newborn child; in § 42 dealing with medical care of the indigent; in § 51 providing that a local board of health may require "any qualified physician appointed by such board as county health officer" to be trained in sanitary science, public health and hygiene; in § 52 concerning the powers of any "physician" called to attend a person suffering a dangerous disease; in § 54F relating to the opinion of a "physician" that a person is dead. Subtitle, "Midwives", concerns one attending upon any lying-in woman or woman in childbed who is not a legally qualified "physician". Subtitle, "Abortion", § 137 sets out the conditions under which a "physician licensed by the State of Maryland may terminate a human pregnancy . . . ." Subtitle, "Commissioners of Pharmacy", speaks of "physician's" prescriptions, § 249, and prescriptions issued by a "physician", § 254A. Subtitle, "Registered Nurses and Practical Nurses", refers to a licensed "physician", § 291 (d). Subtitle, "Optometry", § 381 makes it unlawful for any person knowingly to sell to or prescribe glasses for persons with diseased eyes except it be with their knowledge and consent or on an order of or advice from a registered "physician"; § 383 makes it a misdemeanor for an optometrist to attach to his name or use the title, "M. D., surgeon, doctor, physician . . .", among other titles. Subtitle, "Hospitals and Related Institutions", § 565C, in delineating the rights of health care patients, provides that "every patient can reasonably expect to obtain from his physician or the resident physician of the facility complete and current information concerning his diagnosis, treatment and prognosis. . . ."; in establishing an Advisory Council on Hospital Construction in § 567, it is required that two of the four members appointed from a list submitted by the Hospital Council of Maryland, Inc. shall be "physicians". Subtitle, "Chronic Hospitals and Infirmaries", authorizes such institutions to conduct programs as will assist "physicians" to improve their knowledge and skills, § 598; § 599 provides that admission to a chronic hospital shall be made on the basis of a statement by a "physician". Other sections in various subtitles of Art. 43 speak of "a qualified medical practitioner", §§ 57 and 62; "a licensed practitioner of medicine", §§ 84 and 98; "doctors of medicine", § 489; "persons licensed to practice medicine", § 606. These variations are all used as synonymous with "physicians". In none of the subtitles could the word "physician" contemplate other than a person licensed to practice medicine.

10. Chiropractors say in their brief: "The Medical Practice Act has never governed the practice of chiropractic and the definitions contained therein including the term 'physician' are limited in applicability solely to that subtitle." We observe that the first definition of "physician" in The American Heritage Dictionary of the English Language (1969) is "A person licensed to practice medicine; a medical doctor". The first definition of "physician" in Webster's Third International Dictionary is "a person skilled in the art of healing: one duly authorized to treat disease: a doctor of medicine — often distinguished from surgeon."

## DECISION

In view of the specific meaning of "physician" as used in Art. 43, limiting it to a practitioner of medicine as distinguished from all the other professions registered, certified or licensed and defined by law, we think that the use of "physician" in connection with the name of a person implies that he is engaged in the practice of medicine. Therefore, if a person so using the word is not in fact licensed to practice medicine, such use of the word shows an intent to imply that he is engaged in the practice of medicine and by the mere use of the word in such circumstance he is unlawfully engaged in the practice of medicine as defined by Art. 43, § 119 (h).[11] It necessarily follows that the use of the phrase "chiropractic physician" by a chiropractor who is not licensed to practice medicine is prohibited. We so hold. As the record here is devoid of any evidence that any of the appellants are licensed to practice medicine in Maryland, the order of 25 July 1974 enjoining them from the use of the word physician is affirmed.

Chiropractors point to one statute in which the term "chiropractic physician" is used. Acts 1967, ch. 160, codified as Art. 48A, Title, "Insurance", § 489, reads: "For the purposes of health and accident, sickness and other insurance policies, a chiropractic physician, duly licensed to practice in the State of Maryland, shall be entitled to compensation for those services which he is licensed to perform under the provisions of Article 43 and which he has rendered to any insured." We do not construe this one use of

---

11. Art. 43, § 119 (h) was added effective 1 July 1973 by Acts 1973, ch. 556. It reads:

" *'Practice of medicine'* shall include:
The use of the words or letters 'Dr.,' 'Doctor,' 'M. D.' or any other title in connection with a person's name, with the intent thereby to imply that he or she is engaged in the practice of medicine or any of its branches."

The use of the word "Doctor" or its abbreviation does not necessarily imply the practice of medicine as does the use of the word "physician." As the Attorney General pointed out in 24 Opinions of the Attorney General 172 (1939), the title "Doctor" has no definite relation to the practice of medicine but requires some further description to indicate the profession of the holder. See *supra.*

the term as establishing a legislative intent in the face of what we have discussed that chiropractors may properly so describe themselves. We observe that Art. 43 contains no provision for the licensing of a "chiropractic physician." In any event, Acts 1970, ch. 736, repealing §§ 119 through 149D and enacting new §§ 119 through 136A in lieu thereof and renumbering certain other sections, provided in § 3 "That all laws or parts of laws, public general or public local, inconsistent with the provisions of this Act are hereby repealed to the extent of such inconsistency."

*Order of 25 July 1974 affirmed;*
*appellants to pay costs.*