## COMPTROLLER OF THE TREASURY *v.* JOHN C. LOUIS COMPANY, INC., ET AL.

[No. 93, September Term, 1978.]

*Decided July 24, 1979.*

528

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*Paul S. Sugar, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Paul E. Burke, Jr.,* with whom were *McKenney, Thomsen & Burke* on the brief, for John C. Louis Company, Inc. et al., part of appellees. *Donald F. Burke,* with whom were *Cable, McDaniel, Bowie & Bond* on the brief, for McClung-Logan Equipment Co., Inc., other appellee.

DAVIDSON, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH, J., dissent and SMITH, J., filed a dissenting opinion in which MURPHY, C. J., concurs at page 548 *infra.*

The Maryland Retail Sales Tax Act (Act), Md. Ann. Code art. 81, § 324 (i) (1957, 1975 Repl. Vol.), provides in pertinent part:

> " *'Price' means the aggregate value* in money of any thing or things *paid or delivered,* or promised to be paid or delivered *by a purchaser to a vendor in the consummation and complete performance of a retail sale* without any deduction therefrom on account of the cost of the property sold, cost of materials used, labor or service cost, or any other expense whatsoever. *'Price' shall not include the following:*
>
> . . .
>
> "(4) *The amount paid by any purchaser on account of any bona fide freight, delivery and other*

*transportation charges in connection with any sale of tangible personal property if said freight, delivery or other transportation charges are stated or shown as a separate item from the price of the tangible personal property transferred in the retail sale."* (Emphasis added.) [1]

The question here is whether a retail seller of tangible personal property, subject to a sales tax under the Act, can exclude from the price upon which that tax is computed ("price") a charge for delivering the property from the supplier or manufacturer (supplier) to the retail seller, if that charge is separately stated. In other words, the question is whether the retail seller is required to collect and the buyer is required to pay a tax upon such a charge. We here hold that under certain circumstances the retail seller may exclude such a charge from "price," and need not collect a tax on the amount of such a charge.

The appellees, John C. Louis Company, Inc., Chesapeake Supply & Equipment Co., Chesapeake Supply & Equipment Corp., I-R Equipment Corporation, General Supply and Equipment Co., Inc., Lutherville Supply and Equipment Co., Inc., and McClung-Logan Equipment Co., Inc. (retail sellers), are each, insofar as here relevant, retail sellers of heavy construction equipment such as cranes, earthmovers, bulldozers, loaders, and graders. During 1973 and 1974, for the first time since the enactment of the Act in 1947, the appellant, Comptroller of the Treasury (Comptroller), levied assessments against these retail sellers for uncollected and unpaid sales taxes on charges for delivery from the supplier

---

1. On 29 May 1979, art. 81, § 324 (i) (4) was amended by ch. 713, § 1, Acts of 1979, effective 1 July 1979, which provides:

" *'Price' shall not include the following:*

. . .

"The amount paid by any purchaser on account of any bona fide freight, delivery and other transportation charges in connection with *the retail* sale of *any* tangible personal property *delivered by the vendor, or by a third party acting on behalf of the vendor, directly to the purchaser* if said freight, delivery or other transportation charges are stated or shown as a separate item from the price of the tangible personal property transferred in the retail sale." (Emphasis added.)

to the retail seller. A hearing examiner, Bernard Moan, denied claims for a refund. The retail sellers appealed to the Maryland Tax Court (tax court).

In the tax court, these retail sellers presented detailed evidence to show the customs, usage, and practices prevailing within their industry. Ordinarily, such retail sellers do not keep large pieces of equipment in inventory. Those few items bought to be carried in inventory are, of course, delivered by the supplier to the retail seller before the sale. The retail seller, in turn, delivers the equipment to the buyer after the sale.

The bulk of the equipment sold by such retail sellers, however, is specially ordered for a particular buyer in accordance with that buyer's specifications. Such specially ordered equipment is sometimes delivered from the supplier directly to the buyer's job site. On other occasions, such as when the equipment needs cleaning and servicing before delivery, or arrives in the area at a time when the buyer's job site is shut down, it is delivered to the retail seller, who, often on the very next morning, delivers it to the buyer.

Before 1973, such retail sellers customarily had stated the charge for delivery of such equipment from the supplier separately from the "price" and had not collected sales tax on the amount of such charges. This had been the accepted, customary practice whether the equipment was bought for inventory or specially ordered for a particular buyer and whether the equipment was delivered from the supplier to the retail seller, who in turn delivered it to the buyer, or was delivered from the supplier directly to the buyer.

Various practices were followed in stating the amount of the delivery charge. General Supply and Equipment Co., Inc., Chesapeake Supply & Equipment Co., and Chesapeake Supply & Equipment Corp. stated as the amount of the delivery charge the amount of the delivery cost actually incurred. John C. Louis Company, Inc. stated the amount of the delivery charge which appeared in the contract made at the time of the sale. In approximately 10 per cent of its sales, the delivery cost actually incurred differed from the amount of the delivery charge stated in the contract. When the

contract amount exceeded the delivery cost actually incurred, the buyer would pay the contract amount and the retail seller would pay the excess. When the contract amount was less than the delivery cost actually incurred, the amount paid by the buyer would be reduced. McClung-Logan Equipment Co., Inc. stated an amount for "freight and delivery" in the contract made at the time of sale. "Freight and delivery" included a charge for delivery incurred for delivery from the supplier to the retail seller and a charge for delivery incurred for delivery from the retail seller to the buyer. The buyer would pay the contract amount whether it exceeded or was less than the amount of the delivery cost actually incurred. Lutherville Supply and Equipment Co., Inc. stated an amount for "freight and handling" which was approximately two times the amount of the delivery cost actually incurred. The record contains no evidence to show the practice followed by I-R Equipment Corporation in stating the amount of delivery charges.

The appellees are also retail sellers of small pieces of equipment and replacement parts for large pieces of equipment. Ordinarily, these items are sold from inventory. Each of these items, however, bears a different serial number and a record of the delivery cost actually incurred is kept for each. Before 1973, the retail sellers customarily stated the charge for delivery of these items from the supplier to them separately from the "price," and did not collect tax on the amount of such charges. The amount separately stated as the delivery charge was the delivery cost actually incurred.

The Comptroller presented evidence to show that as a matter of administrative interpretation, charges for delivery from a supplier to a retail seller, even if stated separately, were considered to be a part of the "price" to the buyer and to be taxable. The Assistant Director of the Retail Sales Tax Division, who had been employed by that division for approximately 24 years, said:

> "We have always felt that inbound freight [the charge for delivery from the supplier to the retail seller] was not one in connection with the retail sales. Retail sales is one between a vendor and his

customer. . . . We have always felt that inbound freight transactions between the manufacturer or supplier and the vendor, we feel that a retail sale or the exclusion in 324 (i) (4) is for a retail sale between the vendor and his customer."

He conceded that the Comptroller had never promulgated any formal regulation nor publicized this interpretation in any way. Moreover, he testified that he was unaware of any audits, previous to the ones here in question, which resulted in a deficiency assessment for a charge for delivery from a supplier to a retail seller. Indeed, the only audit he could remember relating to such a charge occurred approximately 15 to 18 years earlier. It involved a "catalogue order store chain" which added to the price quoted in the catalog a separately stated charge for delivery from the supplier to the catalog order store and collected from the buyer a tax on the total amount. He maintained that catalog order store chains, such as "Sears, Mongtomery Ward, Speigels, [and] J. C. Penney," have "always followed the policy" although he did not "have any idea how they became informed of the policy." He stated that on a number of occasions customers of such stores had called him to protest the tax and that he had always informed the protesting customers that the tax was in accord with administrative policy.

The tax court found that the meaning of section 324 (i) (4) was plain and unambiguous. That court pointed out that article 81, sections 324 (d) [2] and 324 (f) [3] provide "separate and

---

2. Art. 81, § 324 (d) (1975 Repl. Vol.) provides in pertinent part:

" 'Sale' and 'selling' mean any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration . . . by a vendor to a purchaser. . . ." (Emphasis added.)

2. Art. 81, § 324 (f) (1975 Repl. Vol.) provides in pertinent part:

" 'Retail sale' and 'sale at retail' shall mean the sale in any quantity or quantities of any tangible personal property or service taxable under the terms of this subtitle. Said term shall mean all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is (i) to resell the property so transferred in the form in which the same is, or is to be received by him, (ii) to destroy the property so transferred in the manufacturing, assembling, processing or refining of other

distinct definitions of 'sale' and 'retail sale' " and that the terms "sale" and "retail sale" both appear in section 324 (i) (4). It held that "[t]he plain meaning of this statute requires us to conclude that freight and delivery charges from a [supplier] to a retailer are not included in the price of the article transferred in the retail sale where such charges are separately stated."

The Circuit Court for Baltimore County (circuit court) affirmed. We issued a writ of certiorari to the Court of Special Appeals before consideration by that Court. With respect to some of the parties, we reach the same result as did the tax court, although for somewhat different reasons, and as to these parties we shall affirm. As to the remaining parties, we shall vacate without affirmance or reversal and remand for further proceedings in the tax court.

The Comptroller initially contends that the tax court and the circuit court erred when they concluded that the meaning of section 324 (i) (4) is plain and unambiguous and that the term "sale" as used in that section means "sale" and does not mean "retail sale." He agrees that the meaning of that section is plain and unambiguous, but argues that for various reasons the term "sale" as used in that section means "retail sale." He concludes that a charge for delivery from the supplier to the retail seller cannot be excluded from the "price" of an item sold in a retail sale.

The Comptroller alternatively contends that if the meaning of section 324 (i) (4) does not plainly establish that the term "sale" as used in that section means "retail sale," then the meaning of that section is, at least, ambiguous. He asserts that although sections 324 (d) and 324 (f) provide different definitions of the terms "sale" and "retail sale," when the term "sale" is used in various other sections of the Act, its context indicates that the term "retail sale" is meant. *See* art. 81, §§ 325, 326, 328, 329, 332, 334, 347, 364. He maintains that under these circumstances, the meaning of the term "sale"

---

tangible personal property to be produced for sale or in the generation of electricity, or (iii) to use or incorporate the property so transferred as a material or part, or other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." (Emphasis added.)

in section 324 (i) (4) is unclear. He suggests that in order to determine the meaning of that section, it is, therefore, necessary to determine the legislative intent, and argues that that intent establishes that the term "sale" as used in section 324 (i) (4) means "retail sale." He then again concludes that a charge for delivery from the supplier to the retail seller cannot be excluded from the "price" of an item sold at retail.

In reaching their conclusions, both the tax court and the Comptroller overlooked certain language set forth in section 324 (i) (4) other than the term "sale." That section also provides that "price" shall not include the amount paid by a buyer for a delivery charge "in connection with any" sale of tangible personal property, if stated as a separate item. Under these circumstances, even assuming without deciding that the term "sale" in section 324 (i) (4) means "retail sale," the issue in this case would not be resolved. We would still be confronted by the question whether charges for delivery from the supplier to the retail seller are delivery charges "in connection with any" retail sale, which can be excluded from "price." Accordingly, the question here is not whether the term "sale" as used in section 324 (i) (4) means "retail sale" and whether the meaning of that section in that respect is plain or ambiguous. Rather, the question here is whether a charge for delivery from a supplier to a retail seller is a delivery charge made "in connection with" a retail sale. In addressing that question, we shall assume without deciding that the term "sale" as used in section 324 (i) (4) means "retail sale."

The Comptroller offers several contentions in support of his position that the Legislature intended the term "sale" as used in section 324 (i) (4) to mean "retail sale" and, consequently, that charges for delivery from the supplier to the retail seller are not to be excluded from "price." These same contentions could equally well support the position that the meaning of section 324 (i) (4), when read in context, and in the light of the purposes of the Act, is ambiguous, and that the Legislature did not intend that charges for delivery from the supplier to the retail seller were to be regarded as charges in connection with a retail sale to be excluded from "price."

We shall treat the Comptroller's contentions as supporting such a position.

The Comptroller primarily contends that the interrelationship between section 324 (i) (4) and sections 324 (i) (1)-324 (i) (3)[4] demonstrates that the Legislature intended that charges for delivery from the supplier to the retail seller are not to be excluded from "price." He maintains that charges for installation, professional and financing services, excluded under sections 324 (i) (1)-324 (i) (3), and charges for delivery from a supplier to a buyer, excluded under section 324 (i) (4), are for optional services, not necessary for the consummation and complete performance of a retail sale, which would not be subject to a sales tax were they not rendered in connection with a retail sale. The purpose of their exclusion, he asserts, is to permit retail sellers who render such services to compete on an equal basis with persons who provide such services although they are not retail sellers, by insuring that those who have such services performed by retail sellers pay no more tax than those who have such services performed for them by persons other than retail sellers or who performed such services for themselves. He argues that a charge for the delivery of heavy equipment from a supplier to a retail seller is a charge for a service which is not optional but rather, like a charge which a retail seller pays for rent or utilities, is a charge for a service which a

---

4. Art. 81, §§ 324 (i) (1)-324 (i) (3) (1975 Repl. Vol.) provide in pertinent part:

" 'Price' means the aggregate value ... paid or delivered ... by a purchaser to a vendor.... *'Price' shall not include the following:*

"(1) The consideration received for labor or services used in installing or applying the property sold if the consideration for such services is separately stated from the consideration received for the tangible personal property in the retail sale.
"(2) The consideration received for professional services rendered in connection with the sale of any tangible personal property if the consideration for such services is separately stated from the consideration received for the tangible personal property transferred in the retail sale.
"(3) The amount paid by any purchaser as, or in the nature of, interest or finance charges on account of credit extended in connection with the sale of any tangible personal property if the interest or finance charges are separately stated from the consideration received for the tangible personal property transferred in the retail sale." (Emphasis added.)

buyer must necessarily pay in order to complete the retail sale. He concludes that if section 324 (i) (4) and sections 324 (i) (1)-324 (i) (3) are to be read harmoniously, delivery charges from the supplier to the retail seller, unlike delivery charges from the retail seller to the buyer, cannot be excluded from "price."

The Comptroller also contends that this interpretation is supported by his administrative construction of the Act, acquiesced in by the Legislature. He maintains that there has been a consistent, long-standing, unvarying administrative practice of treating only charges for delivery from the retail seller to the buyer and from the supplier to the buyer as being incurred in connection with a retail sale. He concludes that the administrative interpretation and practice are entitled to great weight.

Finally, the Comptroller contends that this interpretation of the Act avoids unreasonable results. He insists that an interpretation of section 324 (i) (4) which permits a charge for delivery from the supplier to the retail seller to be excluded from "price" would be deleterious to the public's interest. He points out that in some instances in this case, the amounts excluded from "price" for delivery from the supplier to the retail seller were merely estimates, rather than the amount of the delivery charge actually incurred. He asserts that under these circumstances, "every vendor in this State" would be authorized "to exclude from the taxable basis of all the products which he sells, an amount which reflects his own delivery expenses," even when that amount may not be the delivery charge actually incurred. In addition, his position is that if delivery charges from the supplier to the retail seller are charges in connection with a retail sale, the "costs of transportation further back in the chain of production and distribution, e.g., sales between manufacturers and wholesalers," could also be excluded from "price." Similarly, he insists that costs for professional services and financing, incurred to develop and market products and to carry on business, could also be excluded from "price." He concludes that if all of these items were permitted to be excluded from "price," a substantial portion of the tax base would be eroded.

We do not agree that when read in context and in the light of the purposes of the Act, the language in section 324 (i) (4) is ambiguous, and that the Legislature did not intend that charges for delivery from the supplier to the retail seller were to be regarded as charges in connection with the retail sale and to be excluded from "price." In reaching this conclusion, we rely on fundamental rules of statutory construction.

The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the Legislature. *Unnamed Physician v. Commission on Medical Discipline,* 285 Md. 1, 10, 400 A. 2d 396, 401 (1979). Statutes are to be construed reasonably and with reference to the purpose to be accomplished. *Curtis v. State,* 284 Md. 132, 142, 395 A. 2d 464, 470 (1978).

The primary source from which to determine the intention of the Legislature is the language of the statute itself. *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A. 2d 1091, 1096 (1979). In determining whether the meaning of a statute is ambiguous, it is not proper to confine interpretation to the isolated section to be construed. Rather, in determining the meaning of a particular provision or section, even where its language appears to be clear and unambiguous, it is necessary to examine that provision or section in its context. *Maguire v. State,* 192 Md. 615, 622-24, 65 A. 2d 299, 302-03 (1949); *Crider v. Cullen,* 191 Md. 723, 728, 63 A. 2d 618, 620 (1949); *Lohr v. Upper Potomac River Comm'n,* 180 Md. 584, 588-89, 26 A. 2d 547, 549 (1942); *Pittman v. Housing Auth.,* 180 Md. 457, 463-64, 25 A. 2d 466, 469 (1942); 2A A. Sutherland, *Statutes and Statutory Construction,* § 46.05 (4th ed. C. D. Sands 1973), and in order to understand the particular provision or section in its context, the statute must be examined as a whole and the interrelationship or connection between all of its provisions considered. *Baltimore Gas & Elec. Co. v. Department of Health & Mental Hygiene,* 284 Md. 216, 220-22, 395 A. 2d 1174, 1176-77 (1979); *Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A. 2d 347, 352-53 (1977); 2A A. Sutherland, *Statutes and Statutory Construction,* § 46.05 (4th ed. C. D. Sands 1973). If reasonably possible, the parts of the statute are to be reconciled and harmonized to be consistent

with the statute's object and scope. *Schweitzer v. Brewer,* 280 Md. at 438, 374 A. 2d at 352-53; *Maguire v. State,* 192 Md. at 623, 65 A. 2d at 302; *Pittman v. Housing Auth.,* 180 Md. at 463-64, 25 A. 2d at 469. Results that are unreasonable, illogical or inconsistent with common sense should be avoided and an interpretation should be given which will not lead to absurd or anomalous results. *Frank v. Baltimore County,* 284 Md. 655, 658-59, 399 A. 2d 250, 253 (1979); *Schweitzer v. Brewer,* 280 Md. at 438-39, 374 A. 2d at 352.

More specifically, when, as here, the applicability of a tax statute and not a tax exemption is being construed, it is the established rule not to extend the tax statute's provisions by implication, beyond the clear import of the language used, to cases not plainly within the statute's language, and not to enlarge the statute's operation so as to embrace matters not specifically pointed out. In case of doubt, tax statutes are construed "most strongly against the government, and in favor of the citizen." *Comptroller of the Treasury v. Mandel Re-Election Comm.,* 280 Md. 575, 580, 374 A. 2d 1130, 1132 (1977); *Comptroller of the Treasury v. M. E. Rockhill, Inc.,* 205 Md. 226, 234, 107 A. 2d 93, 98 (1954).

Applying these principles to the instant case produces a clear result. The language in section 324 (i) (4), when read in isolation, is plain and unambiguous. Delivery charges from a supplier to a retail seller are delivery charges "in connection with" a retail sale. After examining section 324 (i) (4) in context, as required by the rules of statutory construction, by considering its interrelationship with sections 324 (i) (1)-324 (i) (3), we conclude that that interrelationship does not demonstrate a legislative intent that charges for delivery from the supplier to the retail seller are not to be excluded from "price."

The record here shows that the bulk of the equipment sold by the retail sellers is specially ordered for particular buyers and is sometimes delivered from the supplier directly to the buyer's job site or sometimes, as an accommodation, is delivered to the retail seller who, in turn, delivers it to the buyer. In all such instances, the buyer has the option of permitting the seller to provide for delivery from the supplier,

or of himself arranging for delivery by a third party, or of himself performing the delivery service. Under these circumstances, a charge for delivery from the supplier to the retail seller is a charge for an optional service, not necessary for the consummation and complete performance of a retail sale, which would not be subject to sales tax were it not rendered in connection with a retail sale. By permitting the exclusion of such charges from "price," a retail seller who provides a delivery service is able to compete on an equal basis with persons who provide such services although they are not retail sellers, and buyers who have such services provided for them by retail sellers pay no more tax than those who themselves arrange for such services to be performed by a third party or who themselves perform such services.

Because the facts here show that the bulk of the charges for delivery from the supplier to the retail seller are for "optional services," those charges, like the charges for installation, professional, and financing services excluded from "price" under sections 324 (i) (1)-324 (i) (3), and like the charges for delivery from the supplier to the buyer excluded from "price" under section 324 (i) (4), are also intended to be excluded from "price" under section 324 (i) (4). To hold otherwise would create a distinction not specifically expressed by the Legislature and would produce an anomalous result. A charge for delivery from the supplier to the buyer would not be taxed, but a charge for delivery from the supplier to the retailer, made as an accommodation to the buyer, would be taxed. Thus, to hold otherwise would be contrary to two rules of statutory construction, that a tax statute's provisions should not be extended by implication beyond the clear import of the language used, to cases not plainly within that statute's language, and that a construction should be given which will not lead to absurd or anomalous results.

Moreover, we are not persuaded that in sections 324 (i) (1)-324 (i) (4), the Legislature intended charges for optional services to be excluded from "price." The record here shows that some few pieces of large equipment and some pieces of smaller equipment, as well as replacement parts for the

pieces of large equipment, are sold from inventory. Because such items are delivered to the retail seller before the sale, a buyer who purchases such an item obviously does not have the option of determining who shall deliver it from the supplier to the retail seller. To hold that for this reason a charge for delivery from a supplier to a retail seller cannot be excluded from "price" would again be contrary to the rules of statutory construction. It would create a distinction not specifically expressed by the Legislature and would produce an anomalous result. A charge for delivery from the supplier to the retail seller for an item delivered to a retail seller before the sale would be taxed, but a charge for delivery from the supplier to the retail seller for an item delivered to the retail seller after the sale, as an accommodation to the buyer, would not be taxed. If the Legislature intended to draw such a distinction, and reach such a result, it would have said so in plain and explicit language.[5] In the absence of any such express language, we can only conclude that there is nothing in sections 324 (i) (1)-324 (i) (3) which establishes that in section 324 (i) (4) the Legislature intended that delivery charges from a supplier to a retail seller, incurred by the retail seller before the sale, unlike delivery charges incurred by the retail seller after the sale, were not to be excluded from "price."

Indeed, a different and at least equally sound view of the common thread which runs through the list of dissimilar and

---

5. The Legislature of at least one other jurisdiction has expressly drawn a distinction between delivery charges incurred before and after a retail sale. *See* D.C. Code Encycl. § 47-2601 (16) (West 1979 Cum. Supp.) which provides in pertinent part:

"(a) 'Sales price' [includes]

. . .

(3) The cost of transportation of the property prior to its sale at retail. . . .
(b) '[S]ales price' does not include . . .

. . .

(5) Transportation charges separately stated, if the transportation occurs after the sale of the property is made."

unrelated services contained in sections 324 (i) (1)-324 (i) (4) is not that they are all optional services, but rather that they are all services which, as a matter of custom and practice, a retail seller ordinarily had performed for the buyer, or had arranged to have performed for the buyer, at cost. Because the transaction of providing such a service did not involve a profit for the retail seller, the transaction was considered to be separate and apart from the retail sale, and the charge for the service was separately stated and was not considered part of the price of the item sold at retail. This view of the interrelationship of sections 324 (i) (1)-324 (i) (4) would support a conclusion that the Legislature intended nothing more than to codify then existing commercial practice by excluding from "price" certain charges for services which by industrywide custom and usage previously had been stated separately from the price of the item sold at retail and had not been considered to be part of the price. Because the rules of statutory construction require that tax statutes be construed most strongly against the government and in favor of the citizen, we reach such a conclusion here.

Under these circumstances, charges for delivery from the supplier to the retail seller for certain items sold by the retail seller from inventory were among the kind of charges intended to be excluded from "price." Here the record shows that each of the items sold from inventory bears a serial number, is shipped f.o.b. point of departure, and has a record kept for each of the costs incurred for delivery from the supplier to the retail seller. The record additionally shows that, as a matter of practice throughout the industry, those charges for delivery have never been included in "price." Because charges for delivery from the supplier to the retail seller for items sold from inventory, like charges for delivery from the supplier to either the retail seller or the buyer, for items specially ordered, have, as a matter of industrywide custom and usage, been stated as a separate item from "price," and have been excluded from "price," such charges are excluded from "price" under section 324 (i) (4).

Nor is there evidence of an administrative interpretation or practice which establishes a legislative intent that charges for

delivery from the supplier to the retail seller are not to be excluded from "price." Although it has been specifically recognized that the interpretation placed by the Comptroller upon the Retail Sales Tax Act is entitled to great weight as an administrative interpretation acquiesced in by the Legislature, such an interpretation is not binding upon the courts. *F. & M. Schaefer Brewing Co. v. Comptroller of the Treasury,* 255 Md. 211, 218-19, 257 A. 2d 416, 419-20 (1969); *Comptroller of the Treasury v. American Cyanamid Co.,* 240 Md. 491, 504-07, 214 A. 2d 596, 603-05 (1965); *Comptroller of the Treasury v. M. E. Rockhill, Inc.,* 205 Md. at 233, 107 A. 2d at 97. Moreover, the weight accorded such an administrative interpretation or practice varies depending upon the circumstances. *Williams v. Dandridge,* 297 F. Supp. 450, 461 (D.Md. 1968), *rev'd on other grounds,* 397 U. S. 471, 90 S. Ct. 1153 (1970). *See Baltimore Gas & Elec. Co. v. Department of Health & Mental Hygiene,* 284 Md. at 220, 395 A. 2d at 1176 (no weight); *Public Serv. Comm'n v. Howard Research & Dev. Corp.,* 271 Md. 141, 152, 314 A. 2d 682, 688 (1974) ("great weight"); *Palm Oil Recovery, Inc. v. Comptroller of the Treasury,* 266 Md. 148, 159, 291 A. 2d 681, 687 (1972) ("great weight"); *Mackie Co. v. State Dep't of Assessments & Taxation,* 264 Md. 121, 135, 285 A. 2d 593, 600 (1972) ("weight"); *Williams v. Loyola College,* 257 Md. 316, 329, 263 A. 2d 5, 11-12 (1970) ("substantial weight"); *F. and M. Schaefer Brewing Co. v. Comptroller of the Treasury,* 255 Md. at 219, 257 A. 2d at 419-20 (no weight); *Department of Motor Vehicles v. Greyhound Corp.,* 247 Md. 662, 669, 234 A. 2d 255, 259 (1967) ("persuasive only"); *Smith v. Higinbothom,* 187 Md. at 133, 48 A. 2d at 763 ("strong presumption," "should not be disregarded except for the strongest and most urgent reasons"). Thus, even an administrative interpretation ordinarily entitled to "great weight" may be given no weight at all where, for example, statutory language "is plain and unambiguous," because "judicial construction cannot be controlled by extraneous considerations, since no custom, however venerable, can nullify the plain meaning and purpose of a statute." *Baltimore Gas & Elec. Co. v. Department of Health & Mental Hygiene,* 284 Md. at 220, 395 A. 2d at 1176;

*Comptroller of the Treasury v. American Cyanamid Co.,* 240
Md. at 506-07, 214 A. 2d at 604-05; *County Treasurer v. State
Tax Comm'n,* 219 Md. 652, 657, 150 A. 2d 452, 455-56 (1959).

In determining the proper weight to be accorded an
administrative interpretation or practice, various factors
must be taken into account. One of these factors is the
consistency of the administrative interpretation or practice
with the purposes of the statute. *Morton v. Ruiz,* 415 U. S.
199, 237, 94 S. Ct. 1055, 1075 (1974); *Holy Cross Hosp., Inc.
v. Health Servs. Cost Review Comm'n,* 283 Md. 677, 685, 393
A. 2d 181, 185 (1978); *Beneficial Finance Co. v. Administrator
of Loan Laws,* 260 Md. 430, 435-42, 272 A. 2d 649, 651-55
(1971); *Rogan v. Baltimore & Ohio R.R.,* 188 Md. 44, 58, 52
A. 2d 261, 268 (1947). Still another is the thoroughness,
breadth, and validity of the considerations underlying the
administrative interpretation or practice. *Skidmore v. Swift
& Co.,* 323 U. S. 134, 140, 65 S. Ct. 161, 164 (1944); *Williams
v. Dandridge,* 297 F. Supp. at 461. The method by which the
agency established its interpretation or practice reflects
varying degrees of study and evaluation of the particularized
problem. Certain methods indicate less thoroughness and
breadth than others. Thus, if an administrative interpretation
has not resulted from a contested adversary proceeding,
*Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U. S. 275,
290, 66 S. Ct. 1105, 1114 (1946); *Securities & Exchange
Comm'n v. Sterling Precision Corp.,* 393 F. 2d 214, 220 (2d Cir.
1968); *Williams v. Dandridge,* 297 F. Supp. at 461, or from a
*promulgated* administrative decision, rule, regulation, or
departmental statement, it is entitled to relatively little
weight. *Williams v. Dandridge,* 297 F. Supp. at 460. *See Biddle
v. Commissioner of Internal Revenue,* 302 U. S. 573, 582, 58
S. Ct. 379, 383 (1938); *Helvering v. New York Trust Co.,* 292
U. S. 455, 468, 54 S. Ct. 806, 810 (1934); *Sims v. United States,*
252 F. 2d 434, 438 (4th Cir. 1958), *aff'd,* 359 U. S. 108, 79 S.
Ct. 641 (1959). Similarly, if the administrative practice has not
been publicly established, it is not entitled to substantial
weight. *M. Kraus & Bros. v. United States,* 327 U. S. 614, 622,
66 S. Ct. 705, 708 (1946); *Levers v. Anderson,* 326 U. S. 219,
223, 66 S. Ct. 72, 74 (1945).

An additional significant factor is the consistency and length of the administrative interpretation or practice. Like an affirmative act, a failure to act can create inconsistency. When an agency fails to implement or enforce a statute in accordance with its own interpretation, it is acting inconsistently. Its failure to enforce diminishes the impact of the administrative interpretation. *Federal Trade Comm'n v. Bunte Bros.,* 312 U. S. 349, 352, 61 S. Ct. 580, 582 (1941); *Bosley v. Dorsey,* 191 Md. 229, 239, 60 A. 2d 691, 695-96 (1948); *Mayor of Baltimore v. Johnson,* 96 Md. 737, 742-43, 54 A. 646, 648 (1903); 2A A. Sutherland, *Statutes and Statutory Construction,* § 49.05 at 239 (4th ed. C. D. Sands 1973). Accordingly, that interpretation is entitled to relatively little weight.

Here the statute under scrutiny is clear and unambiguous. In addition, the record shows that the only evidence to establish the Comptroller's administrative interpretation and practice consisted of the statement of the Assistant Director of the Retail Sales Tax Division, who said that it had always been the administrative policy to regard charges for delivery from a supplier to a retail seller as charges not connected with a retail sale, and, therefore, as charges not to be excluded from "price." Yet, the record shows that since the Act became effective in 1947, no administrative decision, rule, regulation, or statement regarding the taxability of delivery charges under section 324 (i) (4) has been promulgated. It further shows that the Comptroller, who interpreted the statute as requiring that a tax be paid on a charge for delivery from a supplier to a retail seller, failed to enforce that interpretation from 1947 until the instant audits in 1973. Under these circumstances, the Comptroller's interpretation and practice are entitled to little, if any, weight.

Finally, our interpretation of section 324 (i) (4), which permits certain delivery charges from the supplier to the retail seller to be excluded from "price," would not lead to unreasonable results. In keeping with our conclusion that in sections 324 (i) (1)-324 (i) (4), the Legislature intended nothing more than to exclude from "price" certain charges for services which by industrywide custom and usage

previously had been separately stated and not considered as part of the price of the item sold at retail, we view section 324 (i) (4) as permitting only a narrow and limited class of delivery charges to be excluded from "price." Under section 324 (i) (4), a charge may be excluded from "price" if it is a charge for delivery of an identifiable item which, according to industrywide custom and usage, has been shipped f.o.b. point of departure, has had a record of the delivery cost actually incurred kept by the retail seller, has had the delivery cost actually incurred stated separately from "price" by the retail seller, and has had no sales tax collected on the delivery charge by the retail seller. Other charges which do not meet these criteria will not be affected but will continue to be taxed as they were in the past.

The Comptroller's fears that our interpretation would authorize "every vendor in this State to exclude from the taxable basis of all the products which he sells, an amount which reflects his own delivery expenses," and that all delivery costs "further back in the chain of production and distribution," and all costs for professional services and financing incurred to develop and market products and to carry on business would also be excluded from the "price," are unfounded. In essence, charges for services which by custom and usage have previously been excluded from "price" will continue to be excluded, while those which by custom and usage have previously been included will continue to be included. Maryland's tax base will not be substantially eroded.

Moreover, the Comptroller's fear that retail sellers would be able to exclude from "price" an amount other than the delivery cost actually incurred is equally unjustified. Implicit in the concept of the term "delivery charge" is that the amount of the delivery charge separately stated must be the delivery cost actually incurred and not an estimate. If the retail seller states an amount other than the delivery cost actually incurred, the criterion that the retail seller must separately state the delivery charge in order to exclude it from "price" has not been satisfied.

Here the record shows that the retail sellers, General

Supply and Equipment Co., Inc., Chesapeake Supply & Equipment Co., and Chesapeake Supply & Equipment Corp. stated as the amount of the delivery charge the delivery cost actually incurred. Accordingly, with respect to them, we shall affirm. Retail sellers, John C. Louis Company, Inc., Lutherville Supply and Equipment Co., Inc., and McClung-Logan Equipment Co., Inc. stated an amount other than the actual delivery cost incurred. The record contains no evidence as to the amount stated by the I-R Equipment Corporation. Accordingly, with respect to them, pursuant to Maryland Rule 871, we shall, in the interest of justice, remand the case without affirmance or reversal to the Circuit Court for Baltimore County with directions to remand to the Maryland Tax Court for further proceedings in order to afford them an opportunity to present evidence to show on what, if any, occasions they did comply with the applicable criterion that the amount separately stated as the delivery charge be the delivery cost actually incurred.

> *Judgments in favor of General Supply and Equipment Co., Inc., Chesapeake Supply & Equipment Co., and Chesapeake Supply & Equipment Corp. affirmed.*
> *Judgments in favor of John C. Louis Company, Inc., Lutherville Supply & Equipment Co., Inc., McClung-Logan Equipment Co., Inc., and I-R Equipment Corporation vacated without affirmance or reversal, and as to them, case remanded to the Circuit Court for Baltimore County with instructions to remand to the Maryland Tax Court for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellant.*

548

*Smith, J., dissenting:*

I respectfully dissent. In my view charges for transporting a given item from the point of manufacture to the ultimate seller, the retailer, is part of that seller's cost, just as much as his rent, employees' salaries, electricity, etc. Hence, it is a part of "price" to the ultimate purchaser. Maryland Code (1957, 1975 Repl. Vol.) Art. 81, § 324 (c) defines purchaser as "any person who purchases tangible personal property or to whom services are rendered, which are taxable under § 325 of th[at] subtitle." Section 325 imposes a tax "[f]or the privilege of selling certain tangible personal property at retail . . . ." The transportation charges here have only been paid by the purchaser at the retail sale in the sense that when he buys he pays all his seller's expense allocable to the item sold. To me the statute is clearly specifying an exemption only for such charge as the ultimate seller may make for transportation from his place of business to the buyer.

I am authorized to state that Chief Judge Murphy concurs in the views here expressed.