683 A.2d 777

COMPTROLLER OF THE TREASURY

v.

MACK TRUCK, INC.

No. 136, Sept. Term, 1995.

Court of Appeals of Maryland.

Oct. 11, 1996.

John K. Barry, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General; Gerald Langbaum, Assistant Attorney General, on brief), Annapolis, for Appellant.

Herman B. Rosenthal, Baltimore, for Appellee.

Before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

This case involves the construction of the statute of limitations on claims for refund of Maryland income tax. Part of the Maryland statute incorporates by reference the section of the Internal Revenue Code (IRC) providing time limits on claims for refunds of federal taxes. The federal statute includes a special period of limitations where the Internal Revenue Service (IRS) and a taxpayer, pursuant to another section of the IRC, have agreed to extend the period for assessment of additional tax. The issue before us is whether a taxpayer, whose claim for refund of Maryland income tax is independent of any adjustments to the federal income tax return for the same year, obtains the benefit of the special time limit solely as a result of an extension agreement with the IRS, or whether the Comptroller of the Treasury (Comptroller) must also have sought and obtained an assessment extension agreement applicable to the same year.

The taxpayer, Mack Truck, Inc. (Mack), overreported its income on its 1987 Maryland income tax return by one hundred million dollars ($100,000,000.00). The error involved one item, a dividend in that amount paid to Mack by a wholly owned, domestic subsidiary, Mack Financial Corporation. As the common parent company of an affiliated group, Mack filed a consolidated federal income tax return for 1987. Mack included the item in gross dividends received on its federal return, where it also later deducted the same item as an intercompany dividend. See IRC § 243(a)(3) (1986). Under Maryland income tax provisions, each member of an affiliated group of corporations is required to file a separate return. Mary-

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

land Code (1988), § 10–811 of the Tax–General Article, formerly Md.Code (1957, 1987 Cum.Supp.), Art. 81, § 295.[1] On its separate Maryland return Mack erroneously included the dividend, reporting its federal taxable income as $60,222,539. That Maryland return was timely filed on September 13, 1988. The effect of the error was that Mack overpaid its Maryland corporate income tax for 1987 by $936,763.

On August 30, 1990, Mack entered into an agreement with the IRS under the provisions of IRC § 6501(c)(4) extending the period for assessment of federal income tax against Mack for 1987 to January 17, 1993. On March 16, 1993, Mack filed with the Comptroller an amended 1987 Maryland corporate income tax return, reducing its federal taxable income by the dividend received deduction and resulting in a loss of $39,777,-461. Accompanying the amended return was a copy of Mack's extension agreement with the IRS and a request for refund in the principal amount of $936,763.

The Comptroller rejected the claim, essentially because

"[t]he State of Maryland did not request an extension of time within which to assess the taxpayer. Had such a request been made, and the taxpayer agreed, then pursuant to [IRC] § 6511, the statute of limitations would have been extended."

Mack appealed to the Maryland Tax Court where the matter was heard on agreed exhibits, stipulated facts, and the testimony of an audit supervisor in the Comptroller's Office, described *infra*. The Tax Court ordered the refund. On judicial review of the Maryland Tax Court decision, the Circuit Court for Anne Arundel County affirmed. The Comptroller appealed to the Court of Special Appeals, and, prior to consideration of the matter by that court, we issued the writ of certiorari on our own motion. For the reasons hereinafter stated, we shall affirm the circuit court.

---

1. Unless otherwise noted, all statutory references are to Md.Code (1988, 1995 Supp.), Tax–General Article.

The legal issue before us revolves around § 13–1104(c)(1) which we present below in relevant context.

**"§ 13–1104. Time for filing claims for refund.**

"(a) *In general.*—Except as otherwise provided in this section, a claim for refund under this article may not be filed after 3 years from the date the tax, interest, or penalty was paid.

. . . .

"(c) *Financial institution franchise tax and income tax.*—(1) Except as provided in paragraph (2) of this subsection, a claim for refund . . . of . . . income tax may not be filed after the periods of limitations for filing claims for refund . . . set forth in § 6511 of the Internal Revenue Code.

"(2) A claim for refund . . . may not be filed later than 1 year from the date of:

"(i) a final adjustment report of the Internal Revenue Service; or

"(ii) a final decision of the highest court of the United States to which an appeal of a final decision of the Internal Revenue Service is taken.

"(3) Except as provided in paragraph (4) of this subsection, a refund . . . allowed upon a claim filed under this subsection may not exceed the amount of the Maryland tax resulting from the application of the limits set forth in § 6511 of the Internal Revenue Code.

"(4) A refund . . . allowed upon a claim filed under paragraph (2) of this subsection shall be limited to the amount of the reduction in Maryland tax resulting from the federal income tax adjustment."

The portions of the incorporated federal statute, IRC § 6511, that are most relevant to the issue before us read as follows:

"SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.

"(a) PERIOD OF LIMITATION ON FILING CLAIM.—Claim for . . . refund . . . of any tax . . . in respect of which tax the

taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later....

"(b) LIMITATION ON ALLOWANCE OF CREDITS AND REFUNDS.—

"(1) FILING OF CLAIM WITHIN PRESCRIBED PERIOD.—No ... refund shall be allowed ... after the expiration of the period of limitation prescribed in subsection (a) ... unless a claim for ... refund is filed by the taxpayer within such period.

"(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—

"(A) LIMIT WHERE CLAIM FILED WITHIN 3–YEAR PERIOD.—If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the ... refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return....

. . . .

"(c) SPECIAL RULES APPLICABLE IN CASE OF Extension OF TIME BY AGREEMENT.—If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for ... refund—

"(1) TIME FOR FILING CLAIM.—The period for filing claim for ... refund ... provided in subsections (a) and (b)(1), shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement ... under section 6501(c)(4).

"(2) LIMIT ON AMOUNT.—If a claim is filed ... after the execution of the agreement and within 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement ..., the amount of the ... refund shall not exceed the portion of the tax paid after the execution of the agreement and before the filing of the claim

. . ., plus the portion of the tax paid within the period which would be applicable under subsection (b)(2) if a claim had been filed on the date the agreement was executed."

The areas of agreement and dispute between the parties can be demonstrated by a walk through the statutory language. It is agreed that resolution of the dispute is determined by the construction of § 13–1104(c)(1) and that subsection (c)(3) is companion thereto with respect to the limit on the amount of refund. The parties also agree that if a final adjustment to a taxpayer's federal tax liability resulted in a reduction in Maryland tax, the time limit for the taxpayer's claim for a Maryland refund would be controlled by subsection (c)(2) and the amount of the refund would be limited by subsection (c)(4). In cases controlled by § 13–1104(c)(2) and (c)(4) it is undisputed that the taxpayer need not have alerted the Comptroller, prior to the final federal adjustment, that a refund of state taxes might result from ongoing activities involving the federal tax authorities. Those subsections, however, do not apply here because Mack's refund claim does not result from a federal adjustment.

Section 13–1104(c)(1) incorporates IRC § 6511. The parties agree that the directly relevant portion of IRC § 6511 is subsection (c)(1). Mack submits that its agreement under the provisions of IRC § 6501(c)(4) with the IRS of August 30, 1990, extended the period for assessment of federal tax to January 17, 1993, and that, pursuant to incorporated IRC § 6511(c)(1), the period for filing claim for a Maryland refund did not expire until six months thereafter. Thus, Mack's claim for refund, accompanying its amended return filed March 6, 1993, was well within that six months.

The Comptroller disputes Mack's reading of the effect of the incorporation by reference of IRC § 6511(c). The theme of the Comptroller's position is that incorporation by reference of the federal statute into the state statute incorporates only the federal rules, but not the particular federal events. For example, the Comptroller submits that the references in IRC

§ 6511(a) to "the time the return was filed" and to "the time the tax was paid" mean, after incorporation into § 13–1104, the filing of the Maryland return and the payment of the Maryland tax. The Comptroller argues that the timeliness of a claim for a very substantial refund must be determinable from facts or events that are part of the tax system from which the refund is sought. Consequently, submits the Comptroller, the reference in IRC § 6511(c) to an IRC § 6501(c)(4) extension agreement cannot be transported literally into § 13–1104(c)(1); rather, upon incorporation into the Maryland tax system, the federal agreement must be taken to mean an agreement with the Comptroller.

Because there was no agreement between the Comptroller and Mack, the Comptroller says that incorporated IRC § 6511(c) does not apply. Accordingly, there is no special time limit applicable to Mack's refund claim, and the general rule stated in IRC § 6511(a) applies. Here, the longer period is three years from the filing of the 1987 Maryland return on September 13, 1988. Mack filed its claim on March 16, 1993, so that the refund was properly denied under the Comptroller's construction of IRC § 6511(c)(1).

At oral argument Mack conceded that it was reasonable to construe IRC § 6511(a), when incorporated into § 13–1104, to refer to the Maryland return and the Maryland tax. IRC § 6511(a), however, is irrelevant, Mack submits, to its claim. That claim rises or falls on IRC § 6511(c), specifically addressing a federal assessment extension agreement.

If Mack is correct concerning the effect under Maryland law of a federal agreement, then the parties agree that Mack is entitled to the full refund, with interest. It is agreed that under IRC § 6511(c)(2), and regulations interpreting it, the limit on the amount of Mack's refund claim would equal the total of the tax paid after execution of the federal agreement and the amount paid within three years immediately preceding execution of that agreement. Mack is well within that limita-

tion inasmuch as its estimated tax payments in September and December of 1987 totaled $1,100,000.

In their arguments the parties have addressed the construction of § 13–1104(c)(1) from the standpoint of (1) the language of the provision, read in light of the statute as a whole, (2) the legislative history and purpose, and (3) the administrative practice. We shall follow that outline as well.

## I

Section 13–1104(c)(1) incorporates "the periods of limitations ... set forth in § 6511 of the Internal Revenue Code," including the special rule in IRC § 6511(c)(1) which measures the time limit from the expiration of an IRC § 6501(c)(4) extension agreement. Nothing in the Maryland statute expressly modifies the incorporated language making the federal agreement the trigger commencing the running of the period. An argument that, in the process of incorporation, one should substitute corresponding Maryland provisions for the federal provisions encounters the difficulty that there is no Maryland tax statute on the subject of agreements extending the time for assessing additional income tax. Nor is there any regulation or administrative release of the Comptroller alerting taxpayers to the necessity for an extension agreement with the Comptroller, in addition to an extension agreement with the IRS, in order to claim a refund on a ground other than one resulting from an adjustment of the taxpayer's federal return for the same period.

The Comptroller recognizes that IRC § 6511(c)(1) "makes sense because of the natural possibility that the detailed examination of returns that is common to assessments can also lead to related examinations favorable to the taxpayer." Brief of Appellant at 12. It also "makes sense" to us that the detailed examination of returns that is prompted by a potential federal assessment can also lead to the discovery of errors that reduce only the Maryland tax. Under the Comptroller's construction, a taxpayer who wishes to preserve the contingent right to claim a refund can do so only by seeking an

extension agreement from the Comptroller and thereby invite an assessment that the Comptroller had not contemplated making. Such a course of action is so contrary to human nature that the General Assembly seemingly would have set forth that requirement in clear language, had that been the intent.

The Comptroller also argues that Mack's construction creates a one-sided situation "because a <u>federal</u> consent to assessment does not allow Maryland to assess additional tax for the same period." Brief of Appellant at 13. The difference is explained by the Maryland statutes concerning assessment, and the relatively heavy reliance of the Maryland income tax system on federal enforcement of the federal tax. The general statute of limitations on assessment of Maryland income tax is three years from the later of the filing of, or due date for, the return. § 13–1101(a). A taxpayer who enters into a federal assessment extension agreement is not required to notify the Comptroller of that fact at or about the time of the agreement. If the IRS issues a final determination that increases federal taxable income, a Maryland taxpayer, within ninety days after that determination, is obliged to submit to the Comptroller a report of the federal adjustment, including the amount of the increase. § 13–409; Md. Regs.Code tit. 3, § .04.02.11 (1992) (COMAR). If the taxpayer fails to report the federal adjustment within the ninety day period, the three year limit on assessment of income tax no longer applies, and the Comptroller may make an assessment at any time. § 13–1101(b). If the report of federal adjustment is timely filed, the Comptroller has one year following receipt of the report within which to assess additional tax. § 13–1101(c). Conversely, as we have seen above, if the final federal determination results in a decrease in Maryland tax, a refund is available without prior notice to the Comptroller. § 13–1104(c)(2) and (4). These provisions do not reflect any concern that the Comptroller be contemporaneously advised of a federal extension agreement, and they form no basis for reading a require-

ment for a Maryland extension agreement into § 13–1104(c)(1)'s incorporation of IRC § 6511(c)(1).

## II

The circuit court and the Tax Court were particularly persuaded by the legislative history of § 13–1104(c), as are we. The present language of the section was enacted by Chapter 175 of the Acts of 1989. That enactment repealed the predecessor version of § 13–1104(c) of the Tax–General Article, which read as follows:

"(1) Except as provided in paragraph (2) of this subsection, a claim for refund of . . . income tax for a period may not be filed after 3 years from the date on which the return covering the period is due.

"(2) If, within 3 years from the due date of a return for a taxable year, a person files a protective claim or otherwise gives the tax collector notice of a pending federal audit or federal claim for refund with respect to that year, a claim for refund for that year, based on a federal adjustment or federal claim for refund, may be filed at any time."

The present statute was a departmental bill of the Comptroller's Office, House Bill 225. As introduced, H.B. 225 would have replaced the then existing system that required the filing of protective claims. The original version of H.B. 225 would have permitted refunds to be claimed within varying periods of limitations, one of which was two years from the date of the final adjustment report of the IRS. House Bill 225 was amended, after introduction, to the form of present § 13–1104(c). The amendments were prepared by counsel to the Comptroller. The purposes of the amendments were described in a memorandum from the draftsperson to the Director of the Income Tax Division of the Comptroller's Office dated January 27, 1989. That memorandum was included within the bill file of the Department of Legislative Reference on H.B. 225. Those purposes were to:

"1. Carry through the original concept of H.B. 225 of expanding the permitted time for filing of claims for refund;

"2. Increase the conformity of the Maryland Income Tax Law to Federal Income Tax Law by adopting Federal law with respect to claims for refunds; and

"3. Simplify and/or eliminate the more complex features of the original H.B. 225."

The further explanation of the draftsperson included the following:

"The original concept for H.B. 225 remains unchanged. Under current Maryland law, unless a taxpayer files a protective refund claim (which very few do), the taxpayer is not entitled to any refund unless the claim for refund is filed within three years of the due date of the return. This provision is more strict than the corresponding provision of the Internal Revenue Code, (Section 6511) and often operates to the detriment of Maryland taxpayers who choose to pay a tax that is being tested (to avoid additional interest), only to find, after prevailing, that they are not entitled to refund of that tax if their refund claim was not filed within three years of the due date of the return.

"The amendment that I have drafted eliminates this problem by specifically incorporating the refund provisions of Section 6511 of the Internal Revenue Code into the Maryland law. The amendment adding new paragraph 1 to subsection C incorporates Section 6511 with respect to the time within which the refund claim must be filed, and the amendment adding new paragraph 3 to subsection C incorporates the provisions of Section 6511 with respect to limitations on the amount of the refund that may be allowed."

█ In the case before us the Comptroller seeks a construction of § 13–1104(c)(1), with incorporated IRC § 6511(c)(1), that conditions the right to a refund on an implied requirement that the taxpayer and Comptroller have effected an extension agreement for the assessment of Maryland taxes. That construction inserts an unarticulated trap for the unwary into the statute, one primary purpose of which was to eliminate an articulated trap for the unwary. Thus, the

construction for which the Comptroller contends violates one of the cardinal principles of statutory construction, namely, to construe statutes so as to effectuate the legislative purpose. *See Prince George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898, 901 (1995); *City of Baltimore v. Cassidy,* 338 Md. 88, 93–94, 656 A.2d 757, 760 (1995); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–14, 525 A.2d 628, 632 (1987).

## III

The Comptroller also relies on agency interpretation or administrative practice as described in the testimony before the Tax Court of Joseph Parran (Parran), an audit supervisor for the Comptroller's Office whose experience with refund claims started primarily in January 1993. Parran testified that the Comptroller's Office had "consistently" interpreted § 13–1104 to mean that any agreement between a taxpayer and the IRS to extend the federal statute of limitations would not extend the period for a Maryland assessment, or for filing a Maryland refund claim. Parran stated that the Comptroller's Office did not monitor activities concerning the limitations period for federal assessments. He testified that the Comptroller's interpretation was that an extension of the time for making an assessment of Maryland tax automatically extended the time for filing a refund claim for the same year.

On cross-examination, Parran acknowledged that extension agreements between the State and taxpayers have been effected only when the Comptroller is conducting an audit of a taxpayer. Further, to his knowledge, the Comptroller's interpretation has been asserted only as to two other taxpayers, in addition to Mack. Both instances arose in 1993. The record is unclear whether the two other applications of the interpretation antedated or post-dated the rejection of Mack's refund claim.

Judge Davidson, writing for the Court in *Comptroller v. John C. Louis Co.,* 285 Md. 527, 404 A.2d 1045 (1979), re-

viewed some of the rules relating to the use of administrative interpretation or practice in the construction of statutes.

"In determining the proper weight to be accorded an administrative interpretation or practice, various factors must be taken into account. One of these factors is the consistency of the administrative interpretation or practice with the purposes of the statute. Still another is the thoroughness, breadth, and validity of the considerations underlying the administrative interpretation or practice. The method by which the agency established its interpretation or practice reflects varying degrees of study and evaluation of the particularized problem. Certain methods indicate less thoroughness and breadth than others. Thus, if an administrative interpretation has not resulted from a contested adversary proceeding, or from a *promulgated* administrative decision, rule, regulation, or departmental statement, it is entitled to relatively little weight. Similarly, if the administrative practice has not been publicly established, it is not entitled to substantial weight."

*Id.* at 544, 404 A.2d at 1055–56 (citations omitted).

In the instant matter the evidence of administrative practice is modest indeed, apparently consisting at best of two other applications of the interpretation. It is an interpretation which has never been publicly promulgated. It is at odds with the legislative purpose reviewed in Part II, *supra*, and it falls far short of demonstrating legislative acquiescence in a long-standing administrative construction. *See Maryland Classified Employees Ass'n v. Governor*, 325 Md. 19, 33, 599 A.2d 91, 98 (1991), *cert. denied*, 502 U.S. 1090, 112 S.Ct. 1160, 117 L.Ed.2d 407 (1992); *Sinai Hosp. v. Department of Employment & Training*, 309 Md. 28, 46, 522 A.2d 382, 391 (1987) (published agency decisions in contested cases); *Washington Suburban Sanitary Comm'n v. Mitchell & Best Co.*, 303 Md. 544, 559, 495 A.2d 30, 37 (1985) (interpretation originating in 1926 with subsequent re-enactment of applicable statutes).

For all of the foregoing reasons the judgment of the Circuit Court for Anne Arundel County is affirmed.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY THE COMPTROLLER OF THE TREASURY.*